Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
Sean Greene (SBN 328718)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*sgreene@girardsharp.com*

*Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE PFA INSURANCE MARKETING LITIGATION | Case No. 4:18-CV-03771-YGR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Judge:    Hon. Yvonne Gonzalez Rogers<br>Date:     May 2, 2023<br>Time:     2:00 p.m.<br>Courtroom: 1 – 4th Floor |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ..................................................................................... vi

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED ................................................... 2

III.  FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.    Plaintiffs' Allegations ................................................................................ 2

    B.    Early Case Activities ................................................................................. 3

    C.    Discovery Proceedings .............................................................................. 4

    D.    Class Certification Proceedings ................................................................ 4

    E.    Dispositive Motion Practice ..................................................................... 5

    F.    The Settlement Negotiations ..................................................................... 6

IV.   SUMMARY OF SETTLEMENT TERMS ........................................................... 7

    A.    The Settlement Class ................................................................................. 7

    B.    Settlement Consideration ........................................................................... 8

    C.    The Claims Administrator ........................................................................ 10

    D.    The Notice and Claim Form .................................................................... 10

    E.    The Claim Procedure ............................................................................... 12

    F.    Release of Claims .................................................................................... 12

    G.    Objection and Opt-Out Opportunity ....................................................... 13

    H.    Attorneys' Fees and Expenses, and Service Award ................................ 13

V.    ARGUMENT ......................................................................................................... 13

    A.    The Settlement Is Fair, Reasonable, and Adequate ................................. 13

        1.    The Settlement Is the Product of Arm's Length Negotiations
            Among Experienced Counsel ...................................................... 14

i

2.    The Settlement Treats All Class Members Equitably. ...........................15

3.    The Relief Under the Settlement Is Adequate. .......................................18

B.    The Court Will Be Able to Affirm Its Certification of the Class for Settlement Purposes. ...................................................................................20

C.    The Notice and Claim Form Are Reasonable, Comprehensible, and Well-Tailored to the Settlement Relief. .............................................................21

VI.    CONCLUSION .................................................................................................................22

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:18-CV-03771-YGR

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) .................................................................................. 14

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .............................................................................................. 21

*Boyd v. May Trucking Co.*,
    2019 WL 12763009 (C.D. Cal. July 1, 2019).......................................................... 21

*Briseno v. ConAgra Foods, Inc*,
    844 F.3d 1121 (9th Cir. 2017) .................................................................................. 21

*Carlotti v. ASUS Computer Int'l*,
    2020 WL 3414653 (N.D. Cal. June 22, 2020)........................................................... 16

*Federal Ins. Co. v. Caldera Med., Inc.*,
    2016 WL 5921245 (C.D. Cal. Jan. 25, 2016)............................................................ 14

*Foster v. Adams & Assocs., Inc.*,
    2021 WL 4924849 (N.D. Cal. Oct. 21, 2021) .......................................................... 20

*Hendricks v. StarKist Co.*,
    2015 WL 4498083 (N.D. Cal. July 23, 2015)........................................................... 18

*Howard v. Liquidity Servs. Inc.*,
    2018 WL 4853898 (D.D.C. Oct. 5, 2018) ................................................................ 16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2016 WL 3648478 (N.D. Cal. July 7, 2016)............................................................. 18

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2016 WL 6778406 (N.D. Cal. Nov. 16, 2016)........................................................... 15

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2019 WL 536661 (N.D. Cal. Feb. 11, 2019)............................................................. 13

*In re Lenovo Adware Litig.*,
    2018 WL 6099948 (N.D. Cal. Nov. 21, 2018) .......................................................... 19

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .................................................................................. 17

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) .................................................................................. 20

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) .............................................................. 15

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:18-CV-03771-YGR

*In re Oracle Sec. Litig.*,
  1994 WL 502054 (N.D. Cal. June 18, 1994)..................................................... 15

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) ..................................................................... 15

*K.H. v. Secretary of Dep't of Homeland Sec.*,
  2018 WL 6606248 (N.D. Cal. Dec. 17, 2018)................................................. 13

*Kacsuta v. Lenovo (U.S.) Inc.*,
  2014 WL 12585783 (C.D. Cal. Sept. 15, 2014) .............................................. 19

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
  305 F.R.D. 164 (N.D. Cal. 2015) ................................................................... 15

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 5632673 (S.D. Cal. Nov. 30, 2021)................................................. 15

*Kulesa v. PC Cleaner, Inc.*,
  2014 WL 12581769 (C.D. Cal. Feb. 10, 2014) ............................................... 14

*LaGarde v. Support.com, Inc.*,
  2012 WL 13034899 (N.D. Cal. Nov. 2, 2012)................................................. 14

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................ 14, 18

*Mandalevy v. BofI Holding, Inc.*,
  2022 WL 4474263 (S.D. Cal. Sept. 26, 2022)................................................. 17

*Mazzei v. Money Store*,
  829 F.3d 260 (2d Cir. 2016) ......................................................................... 19

*Mendoza v. Hyundai Motor Co., Ltd.*,
  2017 WL 342059 (N.D. Cal. Jan. 23, 2017)................................................... 18

*Norcia v. Samsung Telecommc'ns Am., LLC*,
  2021 WL 3053018 (N.D. Cal. July 20, 2021) ................................................. 16

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir.), *cert. denied*, 143 S. Ct. 424 (2022) ........................... 17

*Rodman v. Safeway, Inc.*,
  2014 WL 988992 (N.D. Cal. Mar. 10, 2014), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) .................. 17

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ..................................................................... 17

*Schueneman v. Arena Pharms., Inc.*,
  2020 WL 3129566 (S.D. Cal. June 12, 2020) ................................................. 17

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016)................................................................... 19

iv

*Theodore Broomfield v. Craft Brew All., Inc.*,
    2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ........................................................... 13

*Van Lith v. iHeartMedia + Entm't, Inc.*,
    2017 WL 1064662 (E.D. Cal. Mar. 20, 2017) .......................................................... 15

*Walker v. Life Ins. Co. of the Sw.*,
    2021 WL 1220692 (C.D. Cal. Feb. 22, 2021) .......................................................... 19

*Youth Just. Coalitions v. City of Los Angeles*,
    2020 WL 9312377 (C.D. Cal. Nov. 17, 2020) ......................................................... 20

**Statutes**

28 U.S.C. § 1715 .......................................................................................................... vi

Cal. Bus. & Prof. Code § 17200 .................................................................................... 2

Cal. Civ. Code § 1689 ................................................................................................... 2

Cal. Civ. Code § 1689.2 ...................................................................................... 1, 15, 16

Cal. Penal Code § 327 ................................................................................................... 2

New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1 .................................................... 2

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................ 21

Fed. R. Civ. P. 23(a) .................................................................................................... vi

Fed. R. Civ. P. 23(b)(3) ........................................................................................ vi, 5, 21

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 10, 21

Fed. R. Civ. P. 23(e) .................................................................................................... vi

Fed. R. Civ. P. 23(e)(1) ............................................................................................... 14

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................. 2, 20, 21

Fed. R. Civ. P. 23(e)(2) ..................................................................................... 14, 18, 20

Fed. R. Civ. P. 23(e)(2)(C)(ii) ..................................................................................... 20

Fed. R. Civ. P. 23(e)(2)(C)(iii) .................................................................................... 20

Fed. R. Civ. P. 23(e)(3) ............................................................................................... 18

Fed. R. Civ. P. 23(f) ...................................................................................................... 5

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:18-CV-03771-YGR

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on May 2, 2023, at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California, Plaintiffs Dalton Chen and Youxiang Eileen Wang will and do hereby move the Court, pursuant to Rules 23(a), (b)(3), and (e) of the Federal Rules of Civil Procedure, for entry of the proposed Preliminary Approval Order, and request that the Court set the following schedule:

| Event | [Proposed] Deadline |
|---|---|
| Class Action Fairness Act notice to state and federal officials, under 28 U.S.C. § 1715 | Within 10 days after filing of this motion |
| Notice to be mailed to Class Members and posted on Settlement Website | Within 28 days after Preliminary Approval |
| Plaintiffs to move for final approval of the settlement | 60 days after Preliminary Approval |
| Plaintiffs to move for attorneys' fees, expenses, and service awards | 60 days after Preliminary Approval |
| Deadline for the submission of objections and requests for exclusion, and any opposition or objections to Plaintiffs' motion for attorneys' fees, expenses, and service awards | 90 days after Preliminary Approval |
| Deadline to file a claim | 90 days after Preliminary Approval |
| Filing of declaration confirming execution of Notice program | At least 35 days before Settlement Hearing |
| Filing of reply briefs in support of final approval and motion for attorneys' fees, expenses, and service awards, and responses to any timely objections | At least 7 days before Settlement Hearing |
| Settlement Hearing | At least 100 days after Preliminary Approval |

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the Declaration of Daniel C. Girard ("Girard Decl.") and the Declaration of Cameron R. Azari ("Azari Decl.") and their attachments, filed herewith, the record in this action, the argument of counsel, and any other matters the Court may consider.

<u>M<small>EMORANDUM OF</small> P<small>OINTS AND</small> A<small>UTHORITIES</small></u>

**I.     I<small>NTRODUCTION</small>**

Plaintiffs Dalton Chen and Eileen Wang seek preliminary approval of their class settlement with Defendants Life Insurance Company of the Southwest ("LICS") and Premier Financial Alliance, Inc. ("PFA").  Plaintiffs sued LICS and PFA for violating state deceptive trade practice laws in connection with PFA's multilevel life-insurance sales plan.  The case was sharply contested, with class certification and summary judgment decided, and trial approaching, before the parties reached agreement on settlement terms.  The parties mediated in August 2022, under the supervision of Hon. Diane Welsh (Ret.), a former Magistrate Judge in the Eastern District of Pennsylvania.  Negotiations continued for the next several months.  The settlement offers class members the opportunity by filing a simple claim form online to recover a substantial portion of the insurance premiums they paid, while avoiding the delay and significant uncertainties associated with a trial and appeals.

The class of insureds eligible to recover under the settlement is the same California class that the Court certified for trial.  The claim and payment process is a simplified version of the claim procedure that would have followed any verdict for the class.  Under the settlement, Defendants agree to pay class members who submit a valid claim their actual premiums paid, minus deductions for LICS's charges for maintaining the policy while it was in force, with a one-third discount.  There is no cap on the total payments and PFA also agrees to implement a series of forward-looking measures to address Plaintiffs' allegations of deceptive practices.

The class members fall into two broad categories: those whose policies already lapsed or were surrendered, and those whose policies remain in force.  By making a claim, the latter group of active policy owner class members will terminate their policies, consistent with Civil Code section 1689.2, which Plaintiffs would rely on to support their claims for rescission at a trial.  Given the composition of the class, the notice will be translated into several languages, and it has been carefully prepared for ease of comprehension.  To the same end, active policyholders and inactive policyholders, who are necessarily situated differently with respect to their options under this settlement, will receive different versions of the notice and claim form.  The claim form requires a simple attestation of class membership, similar to the Court's description.  *See* Dkt. No. 239 at 37:23-26.  Although decisions

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:18-CV-03771-YGR

about life insurance are personal and unique, any class member can consult Class Counsel about their options and can also obtain a dollar estimate of their expected payment.

Under the settlement, Defendants will pay an agreed sum for notice and administration costs separate from the payment of class member claims.  Defendants also will pay Class Counsel's attorneys' fees and costs separate from the relief available to class members, subject to Court approval. The negotiated fee and cost payment, up to $6,371,000, is less than Class Counsel's lodestar accumulated over four years of prosecuting the action and negotiating the settlement.

This settlement conforms to this District's Procedural Guidance for Class Action Settlements and is fair, reasonable, and adequate.  Therefore, the Court should grant preliminary approval and direct that the class members be notified of the settlement and their ability to make a claim for a cash payment.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Should the Court, pursuant to Fed. R. Civ. P. 23(e)(1)(B), preliminarily approve the settlement, authorize notice to the Class and schedule further settlement proceedings?

## III.    FACTUAL AND PROCEDURAL BACKGROUND

The parties litigated this case since 2018 before agreeing to a settlement in principle.  Given the volume of case activities and filings as reflected on the docket, and the Court's familiarity with the course of the litigation, Plaintiffs provide only a high-level overview of the procedural history.

### A.    Plaintiffs' Allegations

In their operative complaint, Plaintiffs asserted claims for (1) violations of the Endless Chain Scheme, Cal. Penal Code § 327 and Cal. Civ. Code § 1689, as a predicate for their claim under the unlawful prong of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) violations of the UCL under the unlawful and unfair prongs as to both Defendants, and under the fraudulent prong as to PFA only; (3) violations of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq.*; (4) fraud by omission as to PFA only; and (5) civil conspiracy.  Dkt. No. 131.

In support of these claims, Plaintiffs alleged that LICS markets complex indexed universal life insurance through PFA, a multi-level sales organization.  PFA generates sales for LICS by recruiting widely, often attracting individuals with no previous insurance or sales experience.  Plaintiffs alleged

2

that recruits are invited to attend "Financial Opportunity Seminars" and small group meetings where PFA sales operatives display images of wealth and tell recruits that they can build their own insurance business and earn passive income by recruiting more people to PFA. Under PFA's step-by-step program, Plaintiffs alleged, recruits pay $125 to join, and are encouraged to "become a client" by purchasing LICS's "Living Life" insurance policy, and then give up their "warm contacts" to their "upline," and then "replicate" the same steps by recruiting new participants who will in turn be pitched to buy the policy, turn over their personal contacts, and recruit others, in an endless cycle. Plaintiffs further alleged that the ostensible goal of joining PFA is to become licensed to sell insurance and profit from sales commissions generated by new recruits, but that few ever become licensed, and of those who do, even fewer succeed in rising in the PFA hierarchy. Before accepting this sales pitch, Plaintiffs alleged, the recruits are never told that only few have achieved the promised financial and professional success. Most end up with a costly insurance policy they otherwise would not have purchased, Plaintiffs contended. *See* Dkt. No. 131 (Complaint). Defendants, for their part, deny liability and have vigorously contested Plaintiffs' allegations. *See* Dkt. No. 136 (PFA Answer); Dkt. No. 137 (LICS Answer). The settlement contains no admission or acknowledgment of wrongdoing or liability.

## B.    Early Case Activities

The initial complaint in the litigation was filed on June 25, 2018. Dkt. No. 1. On January 22, 2019, the Court denied PFA's motion to compel arbitration for failure to demonstrate the existence of an agreement. Dkt. No. 56. On March 26, 2019, the Court held the two actions—*Chen v. PFA*, No. 4:18-cv-03771-YGR, and *Wang v. LICS*, No. 4:19-cv-01150-YGR (N.D. Cal. filed Feb. 28, 2019)— related under the Local Rules. Dkt. No. 81. After holding case management conferences on May 16 (Dkt. No. 93) and August 20 (Dkt. No. 109), the Court on December 19 declined to reconsider its arbitration ruling and denied PFA's motion to transfer the case to the Northern District of Georgia (Dkt. No. 110). The Court held another case management conference on March 6, 2020 (Dkt. No. 107), and on April 16 appointed Girard Sharp LLP as interim class counsel and directed the filing of a consolidated complaint (Dkt. No. 134).

Plaintiffs filed the consolidated complaint on April 30, 2020. Dkt. No. 131. PFA answered on May 19 (Dkt. No. 136) and LICS answered on May 21 (Dkt. No. 137).

### C.    Discovery Proceedings

The parties began discovery in mid-2020.  Girard Decl., ¶ 7.  The parties negotiated, and the Court approved, case management orders regarding confidentiality (Dkt. No. 144), electronically stored information (Dkt. No. 153), privilege issues (Dkt. No. 151), and expert witnesses (Dkt. No. 152).  Girard Decl., ¶ 7.  Defendants produced over 85,000 documents in discovery, which Plaintiffs reviewed and analyzed.  *Id*.  Plaintiffs also gathered and produced voluminous documents in response to defense requests.  *Id*.  The parties took 21 depositions of fact witnesses, and six expert depositions.  *Id*., ¶¶ 9-11.

Among other discovery proceedings, the parties litigated disputes concerning: PFA's production of documents responsive to Plaintiffs' first set of requests and PFA's compliance with the ESI guidelines (Dkt. No. 159); PFA's production of its executive chairman Jack Wu for deposition (Dkt. Nos. 167, 217); LICS's production of class member identification data (Dkt. No. 173); LICS's production of its CEO for deposition (Dkt. No. 190); and extending the fact discovery cutoff so Plaintiffs could pursue the deposition of Jack Wu and their subpoena enforcement action involving Steven Early[1] (Dkt. No. 211).  Girard Decl., ¶¶ 12(a)-(e).

### D.    Class Certification Proceedings

Plaintiffs moved for class certification on May 14, 2021.  Dkt. Nos. 181-82.  PFA and LICS filed oppositions on June 29 (Dkt. Nos. 194-97), and Plaintiffs replied on July 23 (Dkt. Nos. 207-08).

On October 13, 2021, the Court held a video hearing on class certification.  Dkt. No. 251.  On

---

[1] In 2020, Plaintiffs subpoenaed non-party Early, a Georgia lawyer and a former outside counsel to and executive at PFA.  Although Early agreed to appear for a deposition, he refused to comply with Plaintiffs' document subpoena, asserting that all of his responsive documents are privileged.  Girard Decl., ¶ 13.  Plaintiffs filed an action to enforce the subpoena in the Northern District of Georgia, and on April 20, 2021, the Georgia court granted Plaintiffs' motion to transfer the enforcement action to this Court.  *Id*.; *see* Case No. 4:21-mc-80087-YGR-SK.  Judge Kim and this Court issued a series of rulings, and the Ninth Circuit granted Plaintiffs' motions to dismiss Early's two interlocutory appeals.  Girard Decl., ¶ 14.  Early finally provided a privilege log for communications he is withholding on November 17, 2022.  Case No. 4:21-mc-80087-YGR-SK, Dkt. No. 81.  The parties and Mr. Early agreed to table the dispute as settlement negotiations had reached an advanced stage, and on February 28, 2023, Judge Kim ruled that Plaintiffs may seek to reopen their enforcement action if the Settlement of this class action is not approved.  *Id*., Dkt. No. 85.

---

4

November 3, the Court issued an order granting in part and denying in part the motion for class certification. Dkt. No. 239. Specifically, the Court granted certification under Rule 23(b)(3) of a California Class as to Plaintiffs' claims under the unlawful and unfair prongs of the UCL. *Id*. at 38. Subject to various exclusions, the certified Class consists of all persons who enrolled as PFA associates and purchased one or more Living Life or Living Life by Design policies within California between January 1, 2014 and the present. *Id*. The Court otherwise denied Plaintiffs' motion without prejudice. *Id*.

On November 17, 2021, Defendants separately petitioned the Ninth Circuit for review of the class certification under Rule 23(f). Girard Decl., ¶ 18; Ninth Circuit Appeal Nos. 21-80115, 21-80116. Plaintiffs filed a consolidated answer to the petitions on November 29. Girard Decl., ¶ 18. On January 20, 2022, the Ninth Circuit denied review. *Id*.

Motions and stipulations regarding dissemination of class notice followed in 2022. Dkt. Nos. 312, 320, 321, 322, 323, 324, 328, 330, 334. On December 21, 2022, the Court granted the parties' stipulation adjourning the dissemination of class notice in light of the parties' agreement in principle to settle the action. Dkt. No. 352.

### E. Dispositive Motion Practice

On November 19, 2021, the Court conducted a pre-motion conference regarding dispositive motions. Dkt. No. 250. On December 6, PFA and LICS separately moved for summary judgment. Dkt. Nos. 252, 262-63. LICS also moved to exclude the expert opinions of Plaintiffs' testifying experts Dr. William Keep, Christopher Snyder, and Larry Stern (Dkt. Nos. 253-56, 258, 260), and PFA joined those motions (Dkt. Nos. 257, 259, 261). Plaintiffs moved to exclude the expert opinions of LICS's expert Bill Post. Dkt. Nos. 264-66. Plaintiffs and LICS opposed the respective dispositive motions on January 6, 2022 (Dkt. Nos. 269-81), and the parties filed replies in support of their respective dispositive motions on January 18 (Dkt. Nos. 286-95).

On May 31, 2022, the Court held an in-person hearing on the parties' dispositive motions. Dkt. No. 317. On June 15, the Court issued an order granting summary judgment with respect to Plaintiffs' request for prospective injunctive relief; their theory of liability against LICS based on the existence of an LICS-PFA partnership; and Plaintiff Wang's fraud claim against PFA. Dkt. No. 306 at

1  49. The Court otherwise denied the motions for summary judgment. *Id.* Also on June 15, the Court

2  issued a companion order largely denying the parties' *Daubert* motions regarding the admissibility of

3  expert evidence. Dkt. No. 307.

4       **F.    The Settlement Negotiations**

5       On August 11, 2022, the parties participated in an in-person mediation in Philadelphia with

6  Judge Welsh. Girard Decl., ¶ 22. Although the parties did not reach a settlement, they continued

7  negotiating after the mediation. *Id.*, ¶¶ 22-23. The case proceeded on two tracks, with the parties'

8  counsel preparing for trial and concurrently negotiating toward a settlement over the subsequent

9  months. *Id.*, ¶ 23. After PFA's counsel was diagnosed with a terminal illness in September 2022, the

10 parties approached the Court to request an adjustment in the schedule while PFA sought new counsel.

11 On October 11, the Court suspended all pretrial deadlines, except for the pretrial conference set for

12 January 6, 2023 and the trial date set for February 6, 2023. Dkt. No. 337. A week later PFA gave

13 notice that it had engaged new litigation counsel at Coblentz Patch Duffy & Bass LLP ("CPDB").

14 Dkt. Nos. 340-43.

15      Thereafter the parties consented to postpone the trial date and pretrial schedule to allow CPDB

16 time to come up to speed, an adjustment the Court approved on November 14, 2022, setting the

17 pretrial conference for June 2, 2023. Dkt. No. 348. The parties signed a detailed term sheet on

18 December 16, 2022, and on December 22, the Court granted the parties' stipulation to adjourn Class

19 Counsel's obligation to comply with the order to mail notice. Dkt. No. 352. On February 10, 2023,

20 upon receipt of the parties' report confirming their progress in documenting the settlement, the Court

21 vacated the trial date. Dkt. No. 355.

22      Class Counsel's objective in negotiating the settlement was to reproduce to the extent

23 practicable the rescissory relief that Class Counsel would pursue if the class prevailed at trial. Girard

24 Decl., ¶ 25. To mitigate LICS's informational and experiential advantages, Class Counsel retained

25 Philip J. Bieluch, an actuarial consultant specializing in life insurance product development and

26 reinsurance, with previous class action consulting experience, for advice throughout the negotiations.

27 *Id.* The protracted nature of the negotiations is attributable to several factors, including hard

28 bargaining between the parties, the developed record in the case, the lack of ready models for

resolution of alleged "endless chain" claims arising in the insurance sales context, and the reality that not all class members will wish to terminate their policies.  Girard Decl., ¶ 26.

## IV.    SUMMARY OF SETTLEMENT TERMS

The parties' Stipulation of Settlement ("Settlement" or "SA"), appended here with the Girard Declaration, has four exhibits: Exhibit A is the proposed Notice;[2] Exhibit B is the proposed preliminary approval order; Exhibit C is the proposed final order and judgment; and Exhibit D is the proposed Claim Form.[3]

### A.    The Settlement Class

The Class of LICS policyholders eligible for relief under the Settlement is substantially identical to the Class certified for trial, consisting of:

> All Persons who: (i) enrolled as PFA associates between January 1, 2014 and the Stipulation Date and (ii) purchased one or more Living Life Policies within California between January 1, 2014 and the Stipulation Date (March 17, 2023).
>
> The following Persons are excluded from the Class: (a) all individuals who reached the level of Provisional Field Director, Qualified Field Director, Senior Field Director, Regional Field Director, Area Field Director, National Field Director, Executive Field Director, or Senior Executive Field Director at PFA; (b) the judicial officers to whom this matter is assigned and their immediate family members and staff; (c) Defendants, their parents, affiliates, subsidiaries, legal representatives, predecessors, successors, assigns, employees, and any entity in which one of these Defendants has a controlling interest or which has a controlling interest in one of these Defendants; (d) Jack Wu, Aggie Wu, Rex Wu, Hermie Bacus, Bill Hong, Lan Zhang, and their legal representatives, successors, assigns, and immediate family members; (e) any Person who previously released any Defendant pertaining to any Released Claim; and (f) any Person who submits a valid request to be excluded from the Class in accordance with this Stipulation.

SA § 2.4; *compare* Dkt. No. 239 at 38 & n.9.

---

[2] Capitalized terms not otherwise defined have the meaning ascribed to them in the Settlement.

[3] The Notice and Claim Form are divided into two sets: Exhibits A1 and D1 will be sent to former Class Policy owners, and Exhibits A2 and D2 will be sent to current Class Policy owners.  Girard Decl., ¶ 49.  In each instance, the two documents will be included in the same envelope.  *Id.*

7

LICS has identified approximately 22,000 Living Life and Living by Design policies purchased in California between January 2014 and March 2023 by owners whose name matches a name on the list of PFA associates.[4]  Girard Decl., ¶ 29.  In connection with these policies, LICS's records show a total of 13,105 unique addresses, to which the Notice will be sent.  Girard Decl., ¶ 30.  PFA has no record of which individuals reached the upper levels of PFA's marketing hierarchy and are therefore excluded from the class.  *See* Dkt. No. 239 at 37 (the Court noting that "neither defendant has records showing whether a PFA member ever reached one of the positions within PFA that would result in their exclusion").  PFA's list also may contain duplicate entries, as many similar or identical first and last names appear on PFA's member list—which contains, for example, 918 people with the surname "Nguyen" and 249 with the surname "Wang."  Girard Decl., ¶ 31.  Thus, although an exact count is unavailable, it appears there are fewer than 13,000 Class Members.  *Id.*, ¶ 32.

**B.    Settlement Consideration**

The Settlement provides cash payments that resemble the rescissory relief that Plaintiffs would seek were the Class to obtain judgment.  Girard Decl., ¶ 33.

Both Class Members whose Class Policy has lapsed or been surrendered, and Class Members who elect to terminate their in-force Class Policy, can make a claim for a cash payment.  The Settlement obligates the Defendants to return a portion of the premiums paid by Class Member claimants, according to a formula that subtracts cost of insurance and other policy charges from the total premiums paid, and then applies a one-third discount.  The Inactive Policy Relief—for claiming Class Members who owned policies that lapsed or were surrendered—will be calculated as:

> 67 percent of the following formula: (a) the premiums paid on the Class Policy; *minus*; (b) an expense factor of 25 percent of the total premiums paid on the Class Policy; *minus* (c) the total amount of cost of insurance charges and accumulated value charges deducted from the Class Policy; *minus* (d) the total amount of withdrawal, partial surrender, and/or total surrender amounts already paid on the Class Policy.

SA § 3.6.  The Active Policy Relief—for claiming Class Members who are current policy owners and elect termination—will similarly be calculated as:

---

[4] Of these Class Policies, 78% are active and 22% are inactive.  Girard Decl., ¶ 29.

67 percent of the following formula: (a) the premiums paid on the Class Policy; *minus* (b) an expense factor of 10 percent of the total premiums paid on the Class Policy; *minus* (c) the total amount of cost of insurance charges and accumulated value charges deducted from the Class Policy; *minus* (d) the total amount of outstanding policy loans and interest owed to LICS on the Class Policy; *minus* (e) the total amount of withdrawals from or partial surrenders of the Class Policy; *minus* (f) the cash surrender value of the Class Policy.

SA § 3.3.

The deduction for cost of insurance accounts for the cost required to maintain the death benefit protection for the policyholder while the insurance is in place, an offset Plaintiffs conceded would apply if they prevailed at trial.  Dkt. No. 260-2 (Stern Rpt. at 11); Dkt. No. 281-3 (Stern Dep. at 51-52); *see also* Dkt. No. 281-2 (Toole Dep. at 76).  The expense factor deduction accounts for the overhead costs borne by LICS in originating the policy sale, administering the policy, and processing payments and other policy-related transactions.  Girard Decl., ¶ 38.  The expense factor applied to the total premium differs between the inactive and active policyholder groups because the cost to the insurer of rescinding a policy in the first few years is exponentially greater—the insurer recovers the substantial commission due to the selling agent over a period of several years.  *Id*.  Hence, because the inactive policies generally were in force for less time, Plaintiffs conceded a greater deduction from the total payment to inactive policyholder claimants.  *Id*.

The Settlement also obligates PFA to implement and maintain certain forward-looking measures related to the sales practices at issue in the case.  SA, Appx. A.  These include requirements that PFA retain copies of certain approved marketing materials (SA, Appx. A, ¶ 1) and that it make available to enrollees a compensation summary that shows the percentage of "Associates" at each PFA commission level and the average yearly gross earnings at each such level (SA, Appx. A, ¶ 2).  PFA also agrees not to use certain imagery in its promotional and training materials—including images of vacation destinations (other than conference and convention venues), private planes, high-end luxury cars or homes, facsimile or actual checks, or other similar imagery to make or imply claims regarding compensation—and not to use terms like "passive income," "unlimited income potential," "get rich," or "get wealthy."  SA, Appx. A, ¶ 3.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:18-CV-03771-YGR

1

2    **C.    The Claims Administrator**

    The parties agreed that Epiq Class Action & Claims Solutions, Inc. will serve as Claims

3    Administrator.  SA § 2.3.  Epiq is among the most experienced class action settlement administrators

4    and maintains adequate procedures for handling confidential data.  Azari Decl., ¶¶ 3-17.  Epiq has

5    served as the notice and claims administrator in many significant litigations, including this Court's

6    antitrust MDL, *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (N.D. Cal.).

7    The maximum budget for Epiq's services in this case is $200,000, which Defendants will

8    separately pay.  SA § 6.1.  The Court previously approved the parties' selection of Epiq to distribute

9    class notice.  Dkt. No. 334.

10    Pursuant to Paragraph 2 of the Procedural Guidance for Preliminary Approval,[5] Epiq was

11    retained at the request of the Department of Justice to administer the class action settlement in *In re*

12    *U.S. Office of Personnel Management Data Security Breach Litigation*, No. 15-1394 (ABJ) (D.D.C.),

13    in which Girard Sharp serves as lead class counsel.  During the past two years, the firm also has

14    worked with Epiq in *In re Pacific Fertility Center Litigation*, No. 3:18-cv-01586-JSC (N.D. Cal.), and

15    in *In re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, No. 3:19-md-

16    02913-WHO (N.D. Cal.).

17    **D.    The Notice and Claim Form**

18    Using the same method previously approved by the Court (Dkt. No. 334),[6] within 28 days after

19    Preliminary Approval, Epiq will send the Notice by first-class mail to the last-known address of

20    Living Life policyholders who purchased their policy in California in the relevant time period and

21    whose name matches a name from the list of PFA associates.  SA §§ 5.3, 6.5 & Ex. B at ¶ 7(b).  Class

22    Counsel will file a declaration confirming these mailings have been completed.  SA, Ex. B at ¶ 8.

23    Epiq also will perform standard skip-traces and remailings for returned mail.  Azari Decl., ¶ 23; Girard

24    Decl., ¶ 47.  Defendants will send the notice required by the Class Action Fairness Act (SA § 5.2) and

25    file an affidavit confirming that process has been completed (SA, Ex. B at ¶ 9).  Epiq will also post the

26

27    [5] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

28    [6] The Court previously found that this method for distributing class notice "is the best method practicable and satisfies the requirements of Rule 23(c)(2)(B)."  Dkt. No. 328 at 1; *see* Dkt. No. 334.

1    Notice on the Settlement Website.[7]  SA, Ex. B at ¶ 7(a).

2         The Notice complies with all Northern District guidelines.  *See generally* SA, Exs. A1 & A2.

3    Using plain language, the Notice advises Class Members of the pendency and nature of the case, basic

4    settlement terms, and their right to make a claim, to opt out of the Class, to object to the Settlement,

5    and to appear before this Court at the Settlement Hearing.  The Notice also includes Class Counsel's

6    contact information, the address of the Settlement Website, and instructions for how to access the case

7    docket.  The Notice has a placeholder for the date, time, and place of the Settlement Hearing and alerts

8    Class Members that the hearing date may change without further notice but that they should monitor

9    the Settlement Website for updates.  The Notice also describes the process to follow for Class

10   Members who wish to object or opt out.  Finally, the Notice provides details regarding the payment

11   formula and Class Counsel's anticipated motion for attorneys' fees and reimbursement of litigation

12   expenses and for a service award to Plaintiff Chen, to be paid separately by Defendants.

13        Because many Class Members are not native English speakers, the Notice will be translated

14   into several languages—Chinese, Tagalog, Spanish, Vietnamese, and Nepali—and those translated

15   versions will be posted on the Settlement Website.  Girard Decl., ¶¶ 50, 58.  To further assure clear

16   and intelligible communication with this Class, a different notice will be sent to each of the two

17   subgroups of Class Members (former policyholders and active policyholders).  *Id.*, ¶ 51.

18        The notice for the "actives" discloses that making a claim will cause their policy to terminate.

19   *See* SA, Ex. A2.  It also advises that, in deciding whether to make a claim, they should compare an

20   estimate of their potential cash payment under the Settlement with the cash surrender value of the

21   policy, as in some cases the Settlement payment may be less than the cash surrender value.  SA, Ex.

22   A2 at p. 1 & Question 10.  The notice to the actives directs them to the Settlement Website where they

23   can input their unique claim identifier (shown on the enclosed Claim Form) to see this information—

24   i.e., both their estimated Settlement payment and their policy's cash surrender value (with a specified

25   "as of" date)—with the caveat that these values may change before the payment is calculated.  *Id.*;

26   Girard Decl., ¶¶ 59-60.

27

28   _____
     [7] www.pfasettlement.com has been reserved.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:18-CV-03771-YGR

1    A short Claim Form will be enclosed with the Notice packet.  Girard Decl., ¶¶ 58-61.  Like the

2    Notice, the Claim Form has two variants, one for active policyholders and one for inactive

3    policyholders.  *See* SA, Ex. D1 & D2.  The Claim Form requires a claiming Class Member to fill in

4    their contact details, list their policy number, and attest they are a Class Member who is not excluded.

5    SA, Exs. D1 & D2 at §§ III & IV.  To further promote comprehension and accessibility of use, the

6    Claim Form includes a preliminary instruction sheet and a reminder checklist at the end.  SA, Exs. D1

7    & D2.  The two claim forms also will be posted online and can be submitted either online or by U.S.

8    mail.  Girard Decl., ¶ 52.

9        **E.    The Claim Procedure**

10    Class Members will have 90 days from Preliminary Approval to make a claim.  SA § 6.6.  As

11    discussed in the Notice (SA, Ex. A1 & A2 at Questions 8 & 28), Epiq will establish a toll-free

12    telephone number and an email address that Class Members can use to request assistance in filing a

13    claim, and they can also contact Class Counsel for free help.  Girard Decl., ¶ 54.  In addition, Epiq will

14    provide claimants with a reasonable cure opportunity.  SA § 6.7.

15    Starting 90 days after the Effective Date, LICS will initiate procedures to terminate the policies

16    of active policyholder Class Members who elect to terminate, and will calculate the payments to that

17    group and to the group of former policyholder Class Members.  SA § 6.9.  LICS will transfer the total

18    amount to a fund and provide Epiq the payment information so it can remit the payments to Class

19    Members who filed a valid claim.  SA § 9.1.

20    Claimants can elect between electronic payment or paper check.  SA, Ex. D1 & D2 at 2 (Claim

21    Form).  Any unclaimed funds will be distributed *cy pres* according to Court order.  SA § 9.1.

22        **F.    Release of Claims**

23    The Release applies to claims arising from the facts underlying the claims and allegations in

24    this action.  SA §§ 2.24-27, §§ 4.1-4.4.  Consistent with the Procedural Guidance, the Release tracks

25    the claims in the Consolidated Complaint.  *See, e.g.*, *K.H. v. Secretary of Dep't of Homeland Sec.*,

26    2018 WL 6606248, at *4 (N.D. Cal. Dec. 17, 2018) ("Because the release is appropriately limited to

27    claims related to those litigated in this lawsuit, the Court finds it is sufficiently narrow to support

28    approval.").  The Release accordingly extends to claims that relate "to: (i) whether PFA or LICS

operates as an endless chain, pyramid scheme, or similar legally prohibited structure; (ii) the business or business model of PFA or LICS, (iii) any disclosures or omissions relating to PFA or LICS, and/or (iv) marketing or sale of any Living Life Policies."  SA § 2.26.

### G.    Objection and Opt-Out Opportunity

The Settlement allows any Class Member to object to the Settlement or to opt out of the Class. SA §§ 5.4-5.5 & Ex. B at ¶¶ 12-15.  These provisions follow the mandates of Rule 23 and recommendations of the Procedural Guidance.  Objections and opt-outs will be due 90 days after the Preliminary Approval, the same date as the deadline for making claims.  SA, Ex. B at ¶¶ 12, 14.

### H.    Attorneys' Fees and Expenses, and Service Award

Under the Settlement, Defendants agree not to oppose an application by Class Counsel for attorneys' fees not to exceed $6,000,000 and reimbursement of litigation expenses not to exceed $371,000.  SA § 7.1.  The agreed fee was negotiated by the parties after they agreed on all other material terms of settlement, and is lower than Class Counsel's lodestar.  Girard Decl., ¶ 63.

Defendants also agree not to oppose Class Counsel's application for a service award of $10,000 for the Class Representative, Dalton Chen.  SA § 8.1.  Plaintiff Eileen Wang and the other Living Life policyholders who came forward with evidence of their experiences are eligible for the same relief as the Class, in exchange for their individual releases of liability.  SA §§ 2.8, 8.7.  In addition, Defendants will pay Ms. Wang an amount equal to any service award that the Court approves for Mr. Chen.  SA § 8.7.

## V.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, and Adequate.

The requirements for preliminary approval are all met in this case.  "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).  Further, the heightened scrutiny that applies to settlements entered into prior to formal class certification "does not apply to this case because the Court previously certified a class." *Theodore Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *6 (N.D. Cal. Feb. 5, 2020).  At

the preliminary approval stage, the settling parties must furnish the Court "information sufficient to enable it to determine whether to give notice" of the proposed settlement to the class.  Fed. R. Civ. P. 23(e)(1).  The Court will direct notice to all class members who would be bound if doing so "is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2) and (ii) certify the class for purposes of judgment on the proposal."  *Id*.

### 1.    The Settlement Is the Product of Arm's Length Negotiations Among Experienced Counsel.

Under Rule 23(e)(2), the Court considers whether the class representative and class counsel adequately represented the Class and whether the settlement proposal was negotiated at arm's length. Both factors are satisfied here.  First, the Court already determined that Plaintiff Chen and Class Counsel are adequate representatives (Dkt. No. 239 at 16), and the Settlement is the product of their concerted efforts over a period of years to deliver relief to the Class.

Second, the parties' adversarial negotiations proceeded with "sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  This Settlement followed many months of hard bargaining, supervised in part by a retired federal judge.  *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (advising that "involvement of a neutral" in negotiations "may bear on whether they were conducted in a manner that would protect and further the class interests."); *Federal Ins. Co. v. Caldera Med., Inc.*, 2016 WL 5921245, at *5 (C.D. Cal. Jan. 25, 2016).  Moreover, the parties reached their agreement after voluminous document, deposition and expert discovery that addressed the key factual questions in this case.  *See* Dkt. No. 339 at 3 (noting "huge amounts of paper" submitted); *see, e.g.*, *LaGarde v. Support.com, Inc.*, 2012 WL 13034899, at *7 (N.D. Cal. Nov. 2, 2012) (existence of robust discovery indicates plaintiffs were sufficiently informed).  Class Counsel's discovery and expert work, further informed by this Court's opinions on a series of motions, enabled counsel to "enter[] the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions and which are necessary for a robust negotiation."  *Kulesa v. PC Cleaner, Inc.*, 2014 WL 12581769, at *10 (C.D. Cal. Feb. 10, 2014); *see Van Lith v. iHeartMedia + Entm't, Inc.*, 2017 WL 1064662, at *16 (E.D. Cal. Mar. 20, 2017) ("The adversarial nature of these

14

negotiations and the discovery performed by the parties indicate that the settlement process is procedurally adequate.").

### 2. The Settlement Treats All Class Members Equitably.

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6778406, at *3 (N.D. Cal. Nov. 16, 2016) (quoting *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1-2 (N.D. Cal. June 18, 1994)).  The Settlement's plan of allocation meets this standard because it conforms to Plaintiffs' claims in litigation and treats all Class Members fairly and equitably.

The Settlement gives each Class Member the option of terminating their current policy to receive cash or of recovering premiums paid on their former policy.  The Settlement thereby approximates the optional rescission process that Plaintiffs would have proposed after a verdict for the Class—but with simplified proof requirements and swifter relief.   Girard Decl., ¶¶ 25, 55; Dkt. No. 239 at 11 (discussing proposal for "any proposed class members who wish to receive this optional rescission");[8] *see also Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176 (N.D. Cal. 2015) (court may "leav[e] the potentially difficult issue of individualized damage assessments for a later day.") (citing *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014)).

All Class Members are eligible to make a claim, regardless of whether they are former or current policyholders.  Girard Decl., ¶ 39.  Other than the subtractions discussed at page 9 above, the same formula applies to each of these two broad groups of Class Members.  *Id.*, ¶ 38.  Because the Settlement applies this objective formula to Class Members' individual policy records without capping the total payment on valid claims, the Settlement will compensate each claimant commensurate with the actual loss they experienced.  *See Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *7 (S.D. Cal. Nov. 30, 2021) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."); *In re Merrill Lynch & Co., Inc.*

---

[8] *See* Cal. Civ. Code § 1689.2 (permitting a participant in an endless chain scheme to "rescind the contract upon which the scheme is based" and "recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme.").

1    *Research Reports Sec. Litig.*, 2007 WL 313474, at *5 (S.D.N.Y. Feb. 1, 2007) (approving use of loss

2    formula); *Howard v. Liquidity Servs. Inc.*, 2018 WL 4853898, at *2 (D.D.C. Oct. 5, 2018) (similar).

3    　　Some Class Members with active policies have built up sufficient cash value so that it does

4    not make financial sense for them to terminate their policy.  In part for this reason, not all Class

5    Members with an active policy will elect to terminate.  The Settlement fully preserves their right to

6    keep their policy in force.  *See* Girard Decl., ¶ 41.

7    　　For those who choose to make a claim, the deductions under the Settlement's payment

8    formula conform to the mandate to deduct "any amounts paid or consideration provided to the

9    participant."  Cal. Civ. Code § 1689.2.  Plaintiffs previously recognized that, considering the value

10    they received from the Living Life policy while it was in force, the policy charges assessed by LICS

11    would be deducted from individual recoveries.  *E.g.*, Dkt. 260-2 at 11 (among other deductions,

12    Plaintiffs' expert actuary opined that rescinding Class Members should "be entitled to recover all

13    premiums paid . . . minus the total COI deductions, which will be offset as a reasonable proxy for the

14    value the Class Member received for potential death benefits under the Policy during the period it was

15    in force").  The Settlement thus adheres to the actuarial realities of this insurance litigation.

16    　　Pursuant to Paragraph 1(f) of the Procedural Guidance for Preliminary Approval, although it

17    difficult to predict how Class Members will respond to this Settlement, Class Counsel tentatively

18    anticipate a claim rate of approximately 15% for inactive policyholder Class Members and a claim rate

19    of approximately 10% for active policyholder Class Members.  Girard Decl., ¶ 55.  These estimates

20    are based on Class Counsel's experience in similar consumer cases and consultation with the Claims

21    Administrator.  *Id*.; *see, e.g.*, *Carlotti v. ASUS Computer Int'l*, 2020 WL 3414653, at *4 (N.D. Cal.

22    June 22, 2020) (finding that in several consumer cases the claim rate was between 4.7 to 10.9% and

23    approving settlement with 4% claims rate); *Norcia v. Samsung Telecommc'ns Am., LLC*, 2021 WL

24    3053018, at *3 (N.D. Cal. July 20, 2021) (approving consumer settlement with 2% claim rate).

25    　　The parties discussed but ultimately rejected the possibility of making automatic payments to

26    inactive policyholders.  Girard Decl., ¶ 53.  Only Class Members are entitled to recover and, given

27    available information, only through an attestation of Class Membership can a claimant's eligibility for

28    payment be verified.  *Id*.  Therefore, as the Court contemplated in its class certification decision, such

an attestation is necessary to pay Class Member claims.  *See* Dkt. No. 239 at 37:23-26 (noting that Class Members "who wished to rescind their policies could be required to submit an affidavit attesting that they do not hold any of the positions at PFA that are excluded from the proposed subclass and that they otherwise satisfy the requirements for inclusion").

As noted above, not all Class Members will elect a Settlement payment.  Girard Decl., ¶ 41. Some, for instance, have accumulated sufficient cash surrender value that it may not make financial sense to terminate.  *Id*.  But this reality is not a flaw in the Settlement; rather, the shifting policy cash values are inherent to the insurance product at issue.  *Cf. Mandalevy v. BofI Holding, Inc.*, 2022 WL 4474263, at *10 (S.D. Cal. Sept. 26, 2022) (approving settlement of securities class action where class members who profited from their purchased shares received "Recognized Claim" values of zero); *Schueneman v. Arena Pharms., Inc.*, 2020 WL 3129566, at *7 (S.D. Cal. June 12, 2020) (same).  And, because the Settlement focuses relief on those Class Members who discontinued their policies or made minimum payments to keep their policies in effect, the Settlement maximizes recoveries to the Class Members that Class Counsel contend were most harmed by Defendants' alleged scheme: those who found the policy too expensive to maintain.  Girard Decl., ¶ 42.  The cohesion of the Class is not affected given that each Class Member was exposed to the alleged unlawful practices and purchased the promoted product.  *See, e.g.*, *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016) (affirming certification where all class members were exposed to the same challenged practice); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir.) (a certified class may "potentially include[] more than a *de minimis* number of uninjured class members."), *cert. denied*, 143 S. Ct. 424 (2022); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462-63 (9th Cir. 2000); *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *16 (N.D. Cal. Mar. 10, 2014) (a class "will often include persons who have not been injured by the defendant's conduct") (citation omitted), *aff'd*, 694 F. App'x 612 (9th Cir. 2017).

The Settlement's provisions have been diligently crafted to treat all Class Members equitably relative to each other.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:18-CV-03771-YGR

### 3.    The Relief Under the Settlement Is Adequate.

In determining whether the relief for Class Members is adequate under Rule 23(e)(2), the Court considers "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)."[9]  Generally, "[a]pproval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Mendoza v. Hyundai Motor Co., Ltd.*, 2017 WL 342059, at *6 (N.D. Cal. Jan. 23, 2017) (citation omitted).  Additionally, "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *6 (N.D. Cal. July 7, 2016) (citations omitted).

The Settlement ensures that every Class Member whose policy lapsed or was surrendered can make a claim for a significant portion of the premiums they paid and that every Class Member with an in-force policy (on which a death benefit claim has not been made) can terminate it and make a similar claim for settlement relief.  The negotiated formula reduces these awards by a factor of only one-third.  *See, e.g.*, *Linney*, 151 F.3d at 1242 (a class settlement amounting to a fraction of the potential total recovery was reasonable given risks of going to trial); *Hendricks v. StarKist Co.*, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015) (settlement representing "only a single-digit percentage of the maximum potential exposure" was reasonable).  If all Class Members made a claim, the Settlement would pay out almost $50 million in excess of cash surrender values.  Girard Decl., ¶ 33. While the payments will vary, of necessity, based on the amount of premiums paid and other actuarial factors, most Class Members eligible for payment stand to recover thousands of dollars.  *Id*. ¶ 43. Plaintiff Chen, for instance, who is an inactive policyholder, can receive $2,370, which equals 42% of his total premiums paid after subtraction of the policy charges.  *Id*.  Beyond these substantial recoveries, as well, the Settlement imposes a series of forward-looking measures on PFA to address

---

[9] There are no side agreements to disclose under Rule 23(e)(3).

1    Plaintiffs' deceptive practice claims.  SA, Appx. A.

2           In comparison, continuing to pursue these novel pyramid-scheme claims would have been

3    risky for the Class.  Defendants are well defended by experienced counsel and have consistently

4    denied liability.  *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The

5    settlement the parties have reached is even more compelling given the substantial litigation risks in

6    this case.").  LICS argued it could not have participated in a pyramid scheme because inventory

7    loading with an insurance policy is impossible and people neither had to buy a policy to join PFA nor

8    paid for the right to sell a product or to receive rewards unrelated to policy sales to ultimate users.

9    Dkt. No. 263 at 14-16.  LICS also argued that Plaintiffs could not maintain a class action because

10   individuals joined PFA and bought Living Life policies for a host of different reasons.  Dkt. No. 197

11   at 17-18.  PFA argued that paying the $125 enrollment fee did not actually entitle anyone to sell a

12   policy and that no PFA member made money from recruiting unless they sold a policy.  Dkt. No. 252

13   at 16-17.

14          To prevail in the litigation, Plaintiffs would have needed to defeat a likely decertification

15   motion prepared by new counsel and then prevail on complex issues at trial and in a subsequent

16   appeal.  *Mazzei v. Money Store*, 829 F.3d 260, 265-67 (2d Cir. 2016) (court can decertify class even

17   after a jury verdict in favor of a certified class at trial); *see In re Lenovo Adware Litig.*, 2018 WL

18   6099948, at *8 (N.D. Cal. Nov. 21, 2018) (risk of decertification favored preliminary approval).  The

19   time and expenses attributable to trying the case and handling a post-trial appeal are substantial, and

20   there are inherent risks and uncertain outcomes accompanying these events.  *See, e.g.*, *Walker v. Life

21   Ins. Co. of the Sw.*, 2021 WL 1220692, at *8 (C.D. Cal. Feb. 22, 2021) (finding that the parties'

22   demonstrated willingness to appeal weighed in favor of settlement approval, "because in its absence

23   there will be inevitable costs, high risks and delay."); *Kacsuta v. Lenovo (U.S.) Inc.*, 2014 WL

24   12585783, at *4 (C.D. Cal. Sept. 15, 2014) (risks arising from liability defenses favored settlement

25   approval).  In contrast to the risk, uncertainty, expense, and delay that continued litigation would

26   bring, the Settlement affords the Class guaranteed relief.

27          Further, under Rule 23(e)(2)(C)(ii), the Settlement provides for a method of distributing

28   payments that is straightforward and not unduly demanding, yet also sufficient to deter unjustified

claims.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii) advisory committee's note to 2018 amendment.  Each Class Member will be sent a Notice and Claim Form clearly setting forth their options, and they can submit their claim online or by traditional mail to Epiq for determination of eligibility based upon objective considerations.  *See* SA, Exs. A1, A2, D1, D2.  Promptly after the claim period has ended, Defendants will remit payment to Epiq, which in turn will distribute Settlement payments to the eligible Claimants.  SA §§ 6.6, 6.9, 9.1.  Those whose claims are found ineligible will have a reasonable opportunity to cure the deficiency.  SA § 6.7.  This claim process is straightforward, easy to understand, and offers a simplified version of the relief Plaintiffs intended to seek at trial.

Finally, the Settlement provides for a fair and reasonable process and timetable for determining an award of attorney's fees and litigation expenses.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Within 60 days after Preliminary Approval—30 days before the deadline for objections (SA, Ex. B at ¶ 14), consistent with Ninth Circuit precedent, *see In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010)—Class Counsel will apply for their fees, reimbursement of litigation expenses, and a service award for Plaintiff Chen (SA § 7.1 & Ex. B at ¶ 10).  The agreed-upon fee was negotiated by the parties after they agreed on all other material terms of settlement, and is less than Class Counsel's lodestar.  Girard Decl., ¶ 63.[10]

For all of these reasons, Rule 23(e)(2) is satisfied.

**B.    The Court Will Be Able to Affirm Its Certification of the Class for Settlement Purposes.**

The Court certified the Class and likely will be able to affirm its certification at final approval. *See* Fed. R. Civ. P. 23(e)(1)(B).  When the Court has already granted certification, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." *Foster v. Adams & Assocs., Inc.*, 2021 WL 4924849, at *3 (N.D. Cal. Oct. 21, 2021) (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment); *Youth Just. Coalitions v. City of Los Angeles*, 2020 WL 9312377, at *2 (C.D. Cal. Nov. 17, 2020) (same).  As the Settlement effects no change in the

---

[10] Pursuant to Paragraph 6 of the Procedural Guidance for Preliminary Approval, as of March 15, 2023, Class Counsel had devoted 9,704 hours of professional time to this matter since February 2019, for a total lodestar of $6,924,495.  Girard Decl., ¶ 64.

1    Class that the Court certified, it can affirm the certification based on the findings already reached.

2    *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

3    **C.    The Notice and Claim Form Are Reasonable, Comprehensible, and Well-Tailored to the Settlement Relief.**

4

5    Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class

6    members who would be bound by the proposal."  Under Rule 23(b)(3), the Court must "direct to class

7    members the best notice that is practicable under the circumstances, including individual notice to all

8    members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The proposed

9    Notice and Notice Plan meet these standards.  *See generally* Azari Decl.

10    Although direct notice is not required, *see Briseno v. ConAgra Foods, Inc*, 844 F.3d 1121,

11    1129 (9th Cir. 2017), here it is the best notice practicable because LICS's policy records contain

12    contact information of persons who purchased a Living Life policy in California.  Girard Decl., ¶ 56;

13    Dkt. No. 324 at 1.  The Court approved use of direct U.S. mail for notifying the Class Members of this

14    action.  Dkt. Nos. 328, 334; *Boyd v. May Trucking Co.*, 2019 WL 12763009, at *11 (C.D. Cal. July 1,

15    2019) (finding "direct mail notice is satisfactory.").

16    The Notice is based on the Federal Judicial Center models and uses plain language to explain

17    complex insurance issues in simple, understandable terms.  Girard Decl., ¶ 57.  As set forth at page 11

18    above, the Notice addresses all the matters referenced in Rule 23(c)(2)(B).  Translating it into several

19    foreign languages will remove a potential barrier to certain Class Members understanding the

20    Settlement and their options.  Girard Decl., ¶ 58.  The use of separate notices for inactive and active

21    policy owner Class Members will further clarify their choices while avoiding unnecessary confusion.

22    *Id*.; *see* SA, Exs. A1 & A2.

23    Both the Notice and the Claim Form for active policyholders prominently disclose that the

24    consequence of making a claim is that their policy will terminate, foreclosing any other policy-related

25    benefit.  These documents also prominently advise the recipient to compare their estimated Settlement

26    payment with their cash surrender value, noting that they can see estimates of these dollar amounts at

27    the Settlement Website by typing in the unique identifier that appears on their Claim Form.  Girard

28

1   Decl., ¶ 59.  Consequently, active policyholder Class Members will be dissuaded from terminating

2   their policy when doing so is financially unadvisable.  *Id*., ¶ 60.

3       Like the Notice, the short Claim Form has been designed for ease of use and to facilitate

4   informed decision making.  Girard Decl., ¶ 61.  Both the Notice and Claim Form—for both active and

5   inactive policyholders—make clear to the recipient that they can obtain free assistance in deciding

6   whether to make a claim, and how to do so, from Class Counsel, as well as from the Claims

7   Administrator, by phone, email, or U.S. mail.  *Id*.; *see* SA, Exs. A1, A2, D1, D2.  The Notice and

8   Claim Form are fair, reasonable and adequate in all respects.

9   **VI.    CONCLUSION**

10      For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant preliminary

11  approval of the parties' settlement, (2) direct notice to the Class, and (3) establish a schedule for

12  settlement proceedings.

13

14  Dated: March 17, 2023                    Respectfully submitted,

15                                           **GIRARD SHARP LLP**

16                                           */s/ Daniel C. Girard*

17                                           Daniel C. Girard (SBN 114826)
18                                           Jordan Elias (SBN 228731)
                                             Adam E. Polk (SBN 273000)
19                                           Sean Greene (SBN 328718)
20                                           **GIRARD SHARP LLP**
                                             601 California Street, Suite 1400
21                                           San Francisco, CA 94108
                                             Telephone: (415) 981-4800
22                                           Fax: (415) 981-4846
23                                           *dgirard@girardsharp.com*
                                             *jelias@girardsharp.com*
24                                           *apolk@girardsharp.com*
                                             *sgreene@girardsharp.com*
25

26                                           *Class Counsel*

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:18-CV-03771-YGR