EXHIBIT 1

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| IN RE PFA INSURANCE MARKETING LITIGATION | Case No. 4:18-cv-03771-YGR <br><br> **STIPULATION AND AGREEMENT OF SETTLEMENT** |

This Stipulation and Agreement of Settlement (together with all exhibits hereto, the "Stipulation"), dated as of March 17, 2023 (the "Stipulation Date"), is entered into by and among (i) Dalton Chen ("Class Representative"), on behalf of himself and on behalf of the Class (as defined herein), and Youxiang Eileen Wang (collectively with Chen, "Plaintiffs"); (ii) Premier Financial Alliance, Inc. ("PFA"); and (iii) Life Insurance Company of the Southwest ("LICS," and together with PFA, "Defendants"), collectively the "Settling Parties."  This Stipulation states all terms of the settlement and resolution of this matter by the Settling Parties (the "Settlement") and is intended by the Settling Parties to fully and finally release, resolve, remise, and discharge the Released Claims against the Release Parties, subject to the approval of the United States District Court for the Northern District of California ("Court").

# I.    RECITALS

Whereas:

## A.    The Action

### 1.    Plaintiffs' Claims and Allegations

Plaintiffs brought this Action on behalf of persons who enrolled as PFA associates after January 1, 2014 and purchased within California one or more Living Life or Living Life by Design indexed universal life insurance policies issued by LICS ("Living Life Policies").

Class Representative asserts on a class basis California Unfair Competition Law ("UCL") unlawfulness and unfairness claims, alleging that Defendants operate an endless chain scheme in violation of California's Endless Chain Scheme Law, California Penal Code § 327 ("ECL").  Plaintiffs allege that individuals were recruited to become PFA "associates" and to purchase a Living Life Policy through representations indicating that the purchase of a policy would

assist them in advancing through PFA's hierarchy and achieving success and personal wealth.  Plaintiffs allege that they would not have joined PFA or purchased a Living Life Policy had they known about their true chances of success at PFA.

### 2.    Procedural Posture

On April 16, 2020, the Court issued an order consolidating two related actions into a consolidated class action captioned *In re PFA Insurance Marketing Litigation*, No. 4:18-CV-03771-YGR (the "Action"), and appointing Girard Sharp LLP as interim class counsel.

On April 30, 2020, Plaintiffs filed a consolidated class action complaint against Defendants and asserted claims for, *inter alia*, violation of the ECL and violation of all three prongs of the UCL.

On November 3, 2021, the Court entered an order certifying a California class, as to Class Representative's claims under the unlawful and unfair prongs of the UCL, comprised of "all persons who enrolled as Premier associates and purchased one or more Living Life or Living Life by Design policies within California between January 1, 2014 and the present," subject to certain exclusions.  ECF No. 239.

On June 15, 2022, the Court adjudicated Defendants' motions for summary judgment and narrowed the claims remaining in the Action.

### B.    Settlement Negotiations

The Settling Parties, through their counsel and assisted by a mediator, engaged in a months-long, arm's-length negotiation concerning settlement, which included numerous teleconferences and email exchanges, and several proposals and counterproposals.  As a result of these extensive negotiations, the Settling Parties reached an agreement in principle to settle this matter on the terms set

forth in this Stipulation. The Settling Parties thereafter also reached an agreement concerning attorneys' fees and costs. The Settling Parties then exchanged drafts of this Stipulation and the supporting settlement documents.

Class Representative and Lead Counsel have concluded that the terms and conditions of the Settlement are fair, reasonable, and adequate to Class Representative and to the other Class Members, and in their best interests, and have agreed to settle the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering: (1) the benefits the Class Members will receive from the Settlement; (2) the risks of litigation; and (3) the desirability of permitting the proposed Settlement to be consummated as provided by the terms of this Stipulation.

### C.    Defendants' Denial of Wrongdoing and Liability

Throughout the course of the Action and in this Stipulation, Defendants have denied and continue to deny each, any, and all allegations of wrongdoing, fault, liability, or damage whatsoever that have or could have been asserted in the Action. Defendants have also denied and continue to deny, *inter alia*, the allegations and claims that have been or could have been asserted by Plaintiffs, as well as the allegations that Plaintiffs or the Class have suffered damages or that Plaintiffs or the Class were harmed by the conduct alleged in the Action. Defendants continue to believe the claims asserted against them in the Action are without merit; that Plaintiffs and Class Members were not exposed to any misrepresentations regarding the Living Life Policies or their prospects for financial success and advancement within PFA; that PFA and LICS do not operate an endless chain scheme in violation of the ECL; that Plaintiffs and Class Members have not suffered any damages or other injury as a result of their purchase of the Living Life Policies or any alleged conduct, acts, statements, or

omissions by Defendants; that Plaintiffs' requested remedy is not an appropriate remedy in this Action; and that the Action itself should not be certified as a class action for purposes of trial and adjudication of liability and damages. Defendants have not conceded or admitted any wrongdoing or liability, are not doing so by entering this Stipulation, and disclaim any and all wrongdoing and liability whatsoever.

Defendants have agreed to enter into this Stipulation solely to avoid the uncertainties, burden, and expense of further litigation and to put the Released Claims to rest finally and forever. Nothing in this Stipulation shall be construed as or deemed evidence supporting an admission by either PFA, LICS, or any of the Defendant Release Parties with respect to any of Plaintiffs' allegations or claims, or of any wrongdoing, fault, liability, or damages whatsoever.

### D.    Claims of Class Representative and Benefits of Settlement

Class Representative believes that the claims asserted in the Action have merit. Class Representative, however, recognizes and acknowledges the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and any appeals. Class Representative has also considered the uncertain outcome and the risk of any litigation. In particular, Class Representative has considered the inherent problems of proof and possible defenses to the claims asserted in the Action, as well as the best case scenario for the Class following trial and a comparison of that outcome with the relief provided under this Stipulation. Class Representative has determined that the Settlement set forth in this Stipulation is fair, adequate, and reasonable, and in the best interests of the Class.

Nothing in this Stipulation shall be construed as or deemed evidence supporting an admission by Plaintiffs with respect to the merits of any of Defendants' defenses.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Settling Parties that, subject to the approval of the Court, in consideration of the benefits flowing to the Settling Parties from the Settlement set forth herein, the Action and the Released Claims as against the Release Parties shall be finally and fully compromised, settled, and released, the Action shall be dismissed fully, finally, and with prejudice, and the Released Claims shall be finally and fully released as against the Release Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

## II.    DEFINITIONS

In addition to the terms otherwise defined herein, the following terms shall have the meanings specified below:

2.1.  "Active Policy Relief" means the relief under Section 3.3 of this Stipulation.

2.2.  "Claims" means any and all manner of Unknown Claims, claims, debts, demands, controversies, obligations, losses, costs, interest, penalties, fees, expenses, rights, duties, judgments, sums of money, suits, contracts, agreements, promises, damages, actions, causes of action and liabilities, of every nature and description in law or equity (including, but not limited to, any claims for damages, whether compensatory, special, incidental, consequential, punitive, exemplary, or otherwise, injunctive relief, declaratory relief, restitutionary, recession or recessionary damages, interest, attorneys' fees, expert or consulting fees, costs, or expenses), accrued or unaccrued, known or unknown, arising under federal, state, common, administrative, or foreign law, or any other law, rule, or regulation.

2.3.  "Claims Administrator" means Epiq Class Action & Claims Solutions, Inc., which shall administer the Settlement.

2.4.  "Class" means all Persons who: (i) enrolled as PFA associates between January 1, 2014 and the Stipulation Date and (ii) purchased one or more Living Life Policies within California between January 1, 2014 and the Stipulation Date.  The following Persons are excluded from the Class: (a) all individuals who reached the level of Provisional Field Director, Qualified Field Director, Senior Field Director, Regional Field Director, Area Field Director, National Field Director, Executive Field Director, or Senior Executive Field Director at PFA; (b) the judicial officers to whom this matter is assigned and their immediate family members and staff; (c) Defendants, their parents, affiliates, subsidiaries, legal representatives, predecessors, successors, assigns, employees, and any entity in which one of these Defendants has a controlling interest or which has a controlling interest in one of these Defendants; (d) Jack Wu, Aggie Wu, Rex Wu, Hermie Bacus, Bill Hong, Lan Zhang, and their legal representatives, successors, assigns, and immediate family members; (e) any Person who previously released any Defendant pertaining to any Released Claim; and (f) any Person who submits a valid request to be excluded from the Class in accordance with this Stipulation.

2.5.  "Class Member" means any one of, and "Class Members" means more than one or all of, the members of the Class.

2.6.  "Claim Form" means the proof of claim and release form, in the forms attached hereto as Exhibit D1 and Exhibit D2.

2.7.  A "Class Policy" means any one of, and "Class Policies" means more than one or all of, Living Life Policies for which a Class Member is the policyowner and which were purchased within California between January 1,

2014 and the Stipulation Date.  The following are excluded from Class Policies: (a) Living Life Policies for which the insured is deceased; (b) Living Life Policies on which a claim for a death benefit was made or paid prior to the Stipulation Date; (c) Living Life Policies that were rescinded or not taken prior to the Stipulation Date; (d) Living Life Policies on which a full-election or partial-election of any benefit under an Accelerated Benefits Rider ("ABR") was made or paid prior to the Stipulation Date; and (e) Living Life Policies that were sold or assigned to a non-Class Member prior to the Stipulation Date.

2.8.  "Class Witnesses" means Youxiang Eileen Wang, Donna Daniele, Yun Hai Li, and Shannon Xiao.

2.9.  "Defense Counsel" means counsel of record for PFA as of the Stipulation Date and counsel of record for LICS as of the Stipulation Date.

2.10. "Defendant Release Parties" means PFA and LICS, and each of their respective Related Persons.

2.11.  "Effective Date" has the meaning set forth in Section 9.8 of this Stipulation.

2.12.  "Erroneous Claim Form" means a claim form submitted by or on behalf of a Class Member within the deadline for submission of Claim Forms set forth herein, but which is defective in one or more of the following ways: (i) it lacks information called for on the Claim Form; (ii) it contains contradictory or inconsistent information; or (iii) it is otherwise, in the reasonable judgment of the Claims Administrator, not in good order with respect to the information provided thereon.  For avoidance of doubt, under no circumstances shall an untimely Claim Form, or a Claim Form submitted by a Person other than a Class Member, be deemed an Erroneous Claim Form.

2.13.  "Final" when referring to the Final Judgment means exhaustion of all possible appeals, meaning (i) if no appeal or request for review is filed, the day after the date of expiration of any time for appeal or review of the Final Judgment, and (ii) if an appeal or request for review is filed, the day after the date the last-taken appeal or request for review is dismissed, or the Final Judgment is upheld on appeal or review in all material respects, and is not subject to further review on appeal or by certiorari or otherwise; provided, however, that no order of the Court or modification or reversal on appeal or any other order relating solely to the Fee and Cost Reimbursement or Incentive Award shall constitute grounds for cancellation or termination of this Settlement or affect its terms, or shall affect or delay the date on which the Final Judgment becomes Final.

2.14.  "Final Judgment" means the final judgment and order of dismissal to be entered by the Court finally approving the Settlement and dismissing the Action, in the form attached hereto as Exhibit C unless otherwise agreed by all Settling Parties.

2.15.  "Inactive Policy Relief" means the relief available under Section 3.6 of this Stipulation.

2.16.  "Lead Counsel" means Girard Sharp LLP.

2.17.   "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, in the forms attached hereto as Exhibit A1 and Exhibit A2.

2.18.   "Notice Date" means the date twenty-eight (28) calendar days after the Court enters the Preliminary Approval Order.

2.19.  "Person" means an individual, corporation, fund, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or

agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

2.20.  "Plaintiff Release Parties" means Plaintiffs, Lead Counsel, Class Witnesses, all Class Members, and each of their respective Related Persons.

2.21.  "Policy Relief" shall mean the Active Policy Relief and/or Inactive Policy Relief.

2.22.  "Preliminary Approval Order" means the Court's order, substantially in the form attached hereto as Exhibit B, finding that the notice to the Class is justified by the Parties' showing that the Court will likely be able to approve the Settlement under Fed. R. Civ. P. 23(e)(2) and certify the Class for purposes of judgment on the proposal.

2.23.  "Related Persons" means a Person's present and former: immediate family members, heirs, executors, trustees, administrators, successors, assigns, employees, officers, directors, attorneys, legal representatives, accountants, insurers, reinsurers, managers, parents, subsidiaries, divisions, affiliates, predecessors, managers, and agents.

2.24.  "Released Claims" means and includes any and all Released Plaintiffs' Claims and Released Defendants' Claims.

2.25.  "Released Defendants' Claims" means and includes any and all Claims that could have been asserted against any of the Plaintiff Release Parties arising out of, based upon, or relating in any way to the institution, prosecution, or settlement of the Action.  Notwithstanding the foregoing, "Released Defendants' Claims" does not include claims to enforce the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement.

2.26.  "Released Plaintiffs' Claims" means and includes any and all Claims that were or could have been included in the Action, including without limitation

Claims relating in any way, directly or indirectly, to: (i) whether PFA or LICS operates as an endless chain, pyramid scheme, or similar legally prohibited structure; (ii) the business or business model of PFA or LICS, (iii) any disclosures or omissions relating to PFA or LICS, and/or (iv) marketing or sale of any Living Life Policies.  Notwithstanding the foregoing, "Released Plaintiffs' Claims" does not include: (i) Claims to enforce contractual rights to benefits that do not arise out of a Plaintiff Release Party's Claim; and (ii) Claims to enforce the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement.

2.27.  "Release Parties" means any and all Defendant Release Parties and Plaintiff Release Parties.

2.28.  "Relief Calculation Date" means the date or dates on which the cash component of Policy Relief is calculated.  With respect to Inactive Policy Relief, the Relief Calculation Date shall be a date or dates chosen by LICS that occur at least 180 days following the Effective Date.  With respect to Active Policy Relief, the Relief Calculation Date shall be, as to each applicable Class Policy, the date the Class Policy is terminated pursuant to the terms of the Active Policy Relief.

2.29.  "Settlement Hearing" means the hearing at or after which the Court will make a final decision pursuant to Rule 23 of the Federal Rules of Civil Procedure as to whether the Settlement contained in the Stipulation is fair, reasonable, and adequate, and, therefore, should receive final approval from the Court.

2.30.  "Unknown Claims" means and includes any and all claims that one or more Person does not know or suspect to exist in his, her, or its favor at the time of the release.  This includes Claims which, if known by such Person, could have affected his, her, or its settlement with and release of the Release Parties, or

might have affected his, her, or its decision(s) with respect to the Settlement or any release, including his, her, or its decision to object or not to object to this Settlement.  The Settling Parties expressly acknowledge, and the Release Parties by operation of the Judgment shall have acknowledged, and shall be deemed to have expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any other jurisdiction, or principle of common law that is, or is similar, comparable, or equivalent to California Civil Code Section 1542, which provides: **"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."**

The Settling Parties and Release Parties may hereafter discover facts, legal theories, or authorities in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Settling Parties expressly, fully, finally, and forever settle and release, and each other Release Party shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  The Settling Parties expressly acknowledge, and each other Release Party by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in this Stipulation was separately bargained for and a material element of the Settlement.

2.31.  A "Valid Claim Form" means a Claim Form that: (i) has been submitted to the Claims Administrator within the deadline set forth herein; (ii) by or on behalf of a Class Member; and (iii) which is not an Erroneous Claim Form.

## III.    RELIEF TO THE CLASS

3.1.  Defendants shall provide the following relief.

### A.    Active Policy Relief

3.2.  A Class Member shall receive Active Policy Relief with respect to a Class Policy provided all the following criteria are met as of the Relief Calculation Date:

(i) the Class Member has submitted a Valid Claim Form confirming his, her, or its status as a Class Member pursuant to section (v) below and electing Policy Relief with respect to the Class Policy in accordance with the terms of this Stipulation;

(ii) the Class Policy has active status in LICS's administration system as of the Relief Calculation Date (an "Active Class Policy");

(iii) the Class Member has not received, and will not receive, Inactive Policy Relief with respect to the Class Policy;

(iv) there has been no submission with respect to the Class Policy of a death benefit claim, full or partial ABR claim, request for full surrender, or withdrawal request that would, if fulfilled, cause the Class Policy to lapse or otherwise go out of force; and

(v) all of the following are true and attested by the Class Member:

> (a)   he or she enrolled as a PFA associate and paid a $125 fee associated with that enrollment during the time period of January 1, 2014, to the Stipulation Date;

(b)  he or she purchased one or more Living Life Policies within California during the time period of January 1, 2014, to the Stipulation Date;

(c)  for each Active Class Policy elected for relief hereunder, he or she wishes to terminate the policy in exchange for the Policy Relief provided by the Settlement and as a result all rights, benefits and features available under the policy will terminate and no longer be available, including but not limited to any death benefit or cash surrender value available; and

(d)  he or she has not at any time reached any of the following levels within PFA: Provisional Field Director, Qualified Field Director, Senior Field Director, Regional Field Director, Area Field Director, National Field Director, Executive Field Director, or Senior Executive Field Director.

3.3.   With respect to a given Class Policy owned by a Class Member that meets the criteria specified in Section 3.2 above, Active Policy Relief shall consist of the following: (i) the irrevocable termination of the Class Policy as of the Relief Calculation Date; and (ii) a cash payment calculated as 67 percent of the following formula as of the Relief Calculation Date:

(a)  the premiums paid on the Class Policy; *minus*

(b)  an expense factor of 10 percent of the total premiums paid on the Class Policy; *minus*

(c)  the total amount of cost of insurance charges and accumulated value charges deducted from the Class Policy; *minus*

(d)  the total amount of outstanding policy loans and interest owed to LICS on the Class Policy; *minus*

(e)  the total amount of withdrawals from or partial surrenders of the Class Policy; *minus*

(f)  the cash surrender value of the Class Policy.

3.4.  Active Policy Relief will, as of the Relief Calculation Date, cause the policy to terminate, and the Class Member shall not thereafter receive any benefits under the Class Policy.  This includes, without limitation, that the policyholder will not receive any death benefit or the cash surrender value of the Class Policy.

## B.  Inactive Policy Relief

3.5.  A Class Member shall receive Inactive Policy Relief with respect to a Class Policy only if all the following criteria are met as of the Relief Calculation Date:

(i) the Class Member has submitted a Valid Claim Form confirming his, her, or its status as a Class Member pursuant to section (v) below and electing Policy Relief with respect to the Class Policy in accordance with the terms of this Stipulation;

(ii) the Class Policy has the status of lapsed or surrendered in LICS's administration system as of the Relief Calculation Date (an "Inactive Class Policy");

(iii) the Class Member has not received, and will not receive, Active Policy Relief with respect to the Class Policy;

(iv) there has been no submission with respect to the Class Policy of a death benefit claim or full or partial ABR claim; and

(v) all of the following are true and attested by the Class Member:

(a)  he or she enrolled as a PFA associate and paid a $125 fee associated with that enrollment during the time period of January 1, 2014, to the Stipulation Date;

(b)   he or she purchased one or more Living Life Policies within California during the time period of January 1, 2014, to the Stipulation Date;

(c)   for each Inactive Class Policy, he or she wishes to obtain the Policy Relief offered hereunder; and

(d)   he or she has not at any time reached any of the following levels within PFA: Provisional Field Director, Qualified Field Director, Senior Field Director, Regional Field Director, Area Field Director, National Field Director, Executive Field Director, or Senior Executive Field Director.

3.6.   With respect to a given Class Policy owned by a Class Member that meets the criteria specified in Section 3.5 above, Inactive Policy Relief shall consist of a cash payment calculated as 67 percent of the following formula as of the Relief Calculation Date:

(a)   the premiums paid on the Class Policy; *minus*

(b)   an expense factor of 25 percent of the total premiums paid on the Class Policy; *minus*

(c)   the total amount of cost of insurance charges and accumulated value charges deducted from the Class Policy; *minus*

(d)   the total amount of withdrawal, partial surrender, and/or total surrender amounts already paid on the Class Policy.

**C.   PFA Business Changes**

3.7.   PFA shall implement and maintain in effect the provisions set forth in Appendix A.

## IV.     RELEASES, INJUNCTIONS, AND COVENANTS NOT TO SUE

4.1.  Upon the Effective Date, the Plaintiff Release Parties, collectively and individually, shall, and shall be deemed to have, forever released, relinquished, and discharged all Defendant Release Parties, collectively and individually, with respect to the Released Plaintiffs' Claims.

4.2.  Upon the Effective Date, the Defendant Release Parties, collectively and individually, shall, and shall be deemed to have, forever released, relinquished, and discharged the Plaintiff Release Parties, collectively and individually, with respect to the Released Defendants' Claims.

4.3.  All Persons granting any release pursuant to sections 4.1 and 4.2 above covenant not to sue with respect to all Claims released by such Person.

4.4.  All Persons granting any release pursuant to sections 4.1 and 4.2 above shall be permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any Released Claim, in any capacity, against any of the Release Parties.

4.5.  Nothing contained herein shall release or bar any Claim to enforce the terms of this Stipulation or the Final Judgment.

## V.     PRELIMINARY APPROVAL, NOTICE, AND OPT OUT

5.1.   The Settling Parties shall submit this Stipulation and its exhibits to the Court and shall apply for preliminary approval of the Settlement set forth in this Stipulation, entry of the Preliminary Approval Order, and approval for the mailing of the Notice and Claim Form and posting of the Notice and Claim Form on a website dedicated to the administration of the Settlement (the "Settlement Website").

5.2.   Defendants shall be responsible for compliance with the notification procedures of the Class Action Fairness Act.

5.3.  Upon entry of the Preliminary Approval Order, the Claims Administrator shall post the Notice and Claim Form on the Settlement Website and complete the mailing by the Notice Date of the Notice and Claim Form to Class Members, in accordance with the Preliminary Approval Order.

5.4.  Any objections to the Settlement or requests for exclusion must be submitted in accordance with the provisions of the Preliminary Approval Order or as otherwise accepted by the Court ("Requests for Exclusion").

5.5.  The Claims Administrator shall promptly transmit to all Settling Parties all Requests for Exclusion that it may receive.

## VI.  ADMINISTRATION OF POLICY RELIEF

### A.  General Provisions

6.1.  Defendants shall pay the costs and fees of the Claims Administrator up to $200,000.  The Claim Administrator shall bill Defendants directly in accordance with Defendants' reasonable instructions.

6.2.  Absent written agreement of the Settling Parties, the Settling Parties and the Claims Administrator shall have no authority to deviate from the terms of the Stipulation including, without limitation, no authority to accept Claim Forms other than in accordance with this Stipulation.  The Settling Parties acknowledge that adherence to the timelines and provisions set forth herein is necessary to facilitate LICS's ability to implement Policy Relief.

6.3.  No Person shall have any claims against the Claims Administrator, the Settling Parties, Lead Counsel, or Defense Counsel based on the Settlement or the notification and settlement administration process.

### B.  Timeline

6.4.  The following paragraphs specify the schedule of events, beginning from the date of entry of the Preliminary Approval Order ("Preliminary

Approval"), that govern notification of Class Members and the provision of Policy Relief:

6.5.    <u>Within 28 days after Preliminary Approval</u>:  Within 28 days after Preliminary Approval, the Claims Administrator shall complete dissemination of the Notice and Claim Form to each Class Member.

6.6.    <u>90 days after Preliminary Approval</u>:  The deadline for Class Members to submit completed Claim Forms to the Claims Administrator shall be 90 days after Preliminary Approval.  In the case of mailing of Claim Forms, the date of postmark shall determine timeliness.  Claim Forms will not be accepted after the deadline set forth in this section 6.6.

6.7.    <u>60 days after Effective Date</u>:  During the period beginning with the Effective Date and ending on the 60th day after the Effective Date, the Claims Administrator shall undertake reasonable efforts to provide Class Members who submitted Erroneous Claim Forms a reasonable opportunity to cure.  The Claims Administrator shall cease all cure efforts on the 60th day after the Effective Date, and no further cure efforts will be made, and no further cures will be accepted, after that date.  Nothing in this paragraph shall create any entitlement in any Person to receive cure efforts, and the absence of cure efforts shall have no impact on any release provided for herein.  Under no circumstances shall a Class Member be entitled to any Policy Relief if the Class Member has not provided a Valid Claim Form by the 60th day after the Effective Date.  Under no circumstances shall Defendants have any liability to any Class Member based on or arising out of any failure by the Claims Administrator to abide by the terms of the Stipulation.

6.8.    <u>90 days after Effective Date</u>:  By the 90th day after the Effective Date, the Claims Administrator shall provide to each Settling Party a set of all Valid

Claim Forms.  If any Settling Party disputes whether a Claim Form constitutes a Valid Claim Form, any Settling Party shall have the right to submit the matter to the Court for adjudication.  In the event the Claims Administrator is uncertain whether a Claim Form constitutes a Valid Claim Form, the following provisions shall govern: (i) the Claims Administrator shall provide a copy of the Claim Form to all Settling Parties; (ii) the Settling Parties shall seek unanimous agreement as to whether the Claim Form constitutes a Valid Claim Form; and (iii) if the Settling Parties cannot agree, any Settling Party shall have the right to submit the matter to the Court for adjudication.

6.9.  <u>Beginning 90 days after the Effective Date</u>:  LICS shall, pursuant to reasonable commercial efforts, terminate the Active Class Policies that have elected Policy Relief and calculate the amount of Policy Relief due to each eligible Class Member based on Valid Claim Forms.  All Settling Parties shall fully cooperate in LICS's efforts to do so.  LICS shall thereafter disburse the total amount of Policy Relief to the Claims Administrator with a breakdown of the amount due to each eligible Class Member.  The Claims Administrator shall issue the Policy Relief to eligible Class Members.  Any funds that the Claims Administrator is unable to distribute following reasonable efforts shall be donated to a 501(c)(3) non-profit organization proposed by Lead Counsel, but having no affiliation with Lead Counsel or Plaintiffs, and subject to Court approval.

## VII.    LEAD COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

7.1.  Lead Counsel shall make, and Defendants shall not oppose, an application for reimbursement of fees not to exceed the sum of $6,000,000 and costs (subject to Defendants' review of documentation of costs provided by Lead Counsel and determination that all such costs were actually and reasonably incurred) not to exceed the sum of $371,000, in satisfaction of all attorneys' fees,

costs, or expenses that have been claimed or could be claimed in the Action (the "Fee and Cost Reimbursement").  In no event shall Defendants be required to pay an amount more than $6,371,000 for the Fee and Cost Reimbursement.

7.2.   The Fee and Cost Reimbursement shall be contingent upon Court approval, which Lead Counsel shall seek through a motion to be heard at the Settlement Hearing.  Defendants shall take no position with respect to such motion.

7.3.   The Fee and Cost Reimbursement shall be paid by Defendants to Lead Counsel within fifteen (15) calendar days after all the following conditions have been satisfied: (i) the Court has approved the Fee and Cost Reimbursement in an amount not exceeding $6,371,000, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, subject to Lead Counsel's obligation to make appropriate refunds or repayments, pursuant to Section 7.4 below; and (ii) Lead Counsel has supplied Defendants with reasonable payment instructions and completed W-9 forms.

7.4.   If the Fee and Cost Reimbursement award is reduced or reversed following payment by Defendants, Lead Counsel shall refund the amount reduced or reversed to Defendants within fifteen (15) calendar days following a Court order providing for such reduction or reversal.

7.5.   Approval of a Fee and Cost Reimbursement in any amount shall not be a condition of the Settlement, and the Settlement shall proceed if the Court awards a lower amount than $6,371,000.

## VIII.   INCENTIVE PAYMENT TO CLASS REPRESENTATIVE AND RESOLUTION OF CLASS WITNESS CLAIMS

8.1.   Class Representative shall make, and Defendants shall not oppose, an application for an incentive award of $10,000 (the "Incentive Award").  In no

event shall Defendants be required to pay an amount more than $10,000 for the Incentive Award.

8.2.   The Incentive Award shall be contingent upon Court approval, which Class Representative shall seek through a motion to be heard at the Settlement Hearing.  Defendants shall take no position with respect to such motion.

8.3   Defendants shall pay the Incentive Award approved by the Court up to a maximum amount of $10,000 in accordance with reasonable instructions from Lead Counsel and a completed W-9 form.

8.4.   If the Incentive Award is reduced or reversed following payment by Defendants, the Class Representative shall refund the amount reduced or reversed to Defendants within fifteen (15) calendar days following a Court order providing for such reduction or reversal.

8.6.   Approval of an Incentive Award in any amount shall not be a condition of the Settlement, and the Settlement shall proceed if the Court awards a lower amount or disallows any Incentive Award.

8.7.   In consideration of the Class Witnesses releasing the Defendant Release Parties with respect to the Released Plaintiffs' Claims pursuant to Section 4 above, the Class Witnesses shall be eligible to participate in the Settlement on the same terms as Class Members, excepting that they shall not be required to certify purchase of a Class Policy in California.  In addition, and also in consideration of the release provided in Section 4 above, Defendants shall pay to Youxiang Eileen Wang an amount equal to the amount of the Incentive Award approved by the Court.

## IX.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

9.1.   Class Representative, on behalf of the Class; PFA; and LICS shall each have the right to terminate the Settlement and Stipulation by providing

written notice of his, her, or its election to do so ("Termination Notice") to all other Settling Parties within seven (7) business days of:

(i)    entry of a Court order declining to enter the Preliminary Approval Order;

(ii)    entry of a Court order refusing to approve this Stipulation;

(iii)    entry of a Court order declining to enter the Final Judgment;

(iv)    entry of a Court order refusing to dismiss the Action with prejudice;

(v)    entry of an order by which the Final Judgment is modified or reversed by any appeal or review; or

(vi)    failure on the part of any other Settling Party to abide, in material respect, with the terms of this Stipulation.

9.2.   If Persons who otherwise would be Class Members make Requests for Exclusion, and such Persons in the aggregate paid total premiums on Class Policies (as of the deadline for submitting Requests for Exclusion) in an amount of at least $13,000,000 (the "Opt-out Threshold"), then LICS shall have, in its sole and absolute discretion, the option to terminate this Stipulation and Settlement (the "Supplemental Termination Option").

9.3.   LICS may exercise the Supplemental Termination Option, in its sole and complete discretion, by providing written notice to the other Settling Parties of such exercise within seven (7) calendar days after LICS's receipt from Lead Counsel or the Claims Administrator of Requests for Exclusion sufficient to give LICS actual notice that the Opt-out Threshold has been reached.

9.4.   Lead Counsel shall be responsible for notifying LICS of all Requests for Exclusion within seven (7) calendar days of the deadline for Class Members to submit Requests for Exclusion.  In the event LICS receives untimely notification

of any Request for Exclusion, then the time for LICS to exercise its Supplemental Termination Option set forth herein shall be extended to afford LICS no less than seven (7) calendar days after actual notification to determine whether to exercise.

9.5.  If LICS exercises the Supplemental Termination Option, Lead Counsel may, within seven (7) calendar days of receipt of the Notice of Intention (or such longer period as shall be agreed upon in writing as between the Settling Parties), review the validity of any Request for Exclusion and may attempt to cause retraction or withdrawal of any Request for Exclusion.  If within such seven (7) day period (or any longer period agreed upon in writing by the Settling Parties), a sufficient number of Requests for Exclusion are either (i) deemed invalid by agreement of the Settling Parties or by order of the Court; or (ii) withdrawn or retracted, such that the Opt-out Threshold is no longer met, then the Termination pursuant to the Supplemental Termination Option by LICS shall automatically be deemed to be a nullity.

9.6.  To retract or withdraw a prior Request for Exclusion, a Class Member must file a written notice with the Court stating that person's or entity's desire to retract or withdraw his, her, or its Request for Exclusion and that person's or entity's desire to be bound by any judgment and settlement; provided, however, that the filing of such written notice may be effected by Lead Counsel, as long as it is personally executed by a Class Member.

9.7.  In the event that LICS provides a Notice of Intention to exercise its Supplemental Termination Option, such Notice of Intention may be withdrawn by providing written notice of such withdrawal to Lead Counsel no later than 5:00 p.m. Pacific time on the day before the Settlement Hearing, or by such later date as may be agreed upon in writing as between the Settling Parties.

9.8.  The Effective Date of this Stipulation ("Effective Date") shall not occur unless and until each of the following events occurs, provided that no Settling Party has exercised a termination option as provided in this Section 9, and it shall be the date upon which the last in time of the following events occurs:

(a)    The Court has entered the Preliminary Approval Order;

(b)    The Court has approved the Settlement, following notice to the Class and the Settlement Hearing, and has entered the Final Judgment;

(c)    The Final Judgment has become Final; and

(d)    The Action has been dismissed with prejudice.

9.9.  None of the Settling Parties, or any of them, shall have any obligation whatsoever to proceed under any terms other than those provided for and agreed herein.  If any Settling Party engages in a material breach of the terms hereof, any other Settling Party, provided that it is in substantial compliance with the terms of this Stipulation, may terminate this Stipulation on notice to all the Settling Parties.

9.10.  In the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, the Settling Parties shall be restored to their respective positions in the Action immediately prior to the execution of this Stipulation, and they shall proceed in all respects as if the Stipulation had not been executed and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Action shall be preserved without prejudice.

9.11.  In the event that the Stipulation is not approved by the Court or the Settlement set forth in this Stipulation is terminated or fails to become effective in accordance with its terms, the terms and provisions of this Stipulation, except as otherwise provided herein, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Action or in any other proceeding

for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

9.12.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Fee and Cost Reimbursement or Incentive Award shall constitute grounds for cancellation or termination of the Stipulation.

## X.    NO ADMISSION OF LIABILITY OR WRONGDOING

10.1.  The Settling Parties covenant and agree that neither this Stipulation, nor the fact nor any terms of the Settlement, nor any communication relating thereto, is evidence, or an admission, presumption, or concession by any Settling Party or their counsel, any Class Member, or any of the Release Parties of any fault, liability, or wrongdoing whatsoever, as to any facts or claims alleged or that have been or could have been asserted in the Action, or in any other actions or proceedings, or as to the validity or merit of any of the claims or defenses alleged or that have been or could have been asserted in any such action or proceeding. This Stipulation is not a finding or evidence of the validity or invalidity of any claims or defenses in the Action, any wrongdoing by any Settling Party, Class Member, or any of the Release Parties, or any damages or injury to any Settling Party, Class Member, or any Release Parties.  Neither this Stipulation, nor any of the terms and provisions of this Stipulation, nor any of the negotiations or proceedings in connection therewith, nor any of the associated documents or statements, nor the Settlement, nor the fact of the Settlement, nor the Settlement proceedings, nor any statement in connection therewith, (a) shall (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any Release Party, or of any infirmity of any defense, or of any damages to the Plaintiffs or any other Class Member, or (ii)

otherwise be used to create or give rise to any inference or presumption against any of the Release Parties concerning any fact or any purported liability, fault, or wrongdoing of the Release Parties or any injury or damages to any person or entity; or (b) shall otherwise be admissible, referred to, or used in any proceeding of any nature, for any purpose whatsoever; provided, however, that the Stipulation or the Final Judgment may be introduced in any proceeding, whether in the Court or otherwise, as may be necessary to enforce the Settlement or Final Judgment, or as otherwise required by law.

## XI.    MISCELLANEOUS PROVISIONS

11.1. Except in the event of termination pursuant to Section 9 of this Stipulation, the Settling Parties shall take all actions necessary to consummate this agreement; and agree to cooperate with each other to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation.

11.2. The Settling Parties and their counsel represent that they will not encourage or otherwise influence (or seek to influence) any Class Members to request exclusion from, or object to, the Settlement or the Fee and Cost Reimbursement.

11.3.  Each of the attorneys executing this Stipulation, any of its exhibits, or any related settlement documents on behalf of any Settling Party hereto hereby warrants and represents that he or she has been duly empowered and authorized to do so by the Settling Party he or she represents.

11.4.  Plaintiffs and Lead Counsel represent and warrant that none of Plaintiffs' claims or causes of action against Defendants in the Action, or referred to in this Stipulation, or that could have been alleged against one or more of the Defendants in the Action have been assigned, encumbered, or in any manner transferred in whole or in part.

11.5.  This Stipulation constitutes the entire agreement between the Settling Parties related to the Settlement and supersedes any prior agreements.  No representations, warranties, promises, inducements, or other statements have been made to or relied upon by any Settling Party concerning this Stipulation, other than the representations, warranties, and covenants expressly set forth herein. Class Representative, on behalf of himself and the Class, acknowledges and agrees that any and all other representations and warranties of any kind or nature, express or implied, are specifically disclaimed and were not relied upon in connection with this Stipulation.  In entering this Stipulation, the Settling Parties relied solely upon their own knowledge and investigation.  Except as otherwise provided herein, each Settling Party shall bear its own costs.

11.6.  This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their counsel or their respective successors in interest.

11.7.  This Stipulation shall be binding upon, and shall inure to the benefit of, the Settling Parties and their respective agents, successors, executors, heirs, and assigns.

11.8.  The Release Parties who do not appear on the signature lines below are acknowledged and agreed to be third party beneficiaries of this Stipulation and Settlement with power to enforce the releases, covenants not to sue, and injunctions in their favor.

11.9. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.10.  This Stipulation may be executed in any number of counterparts by any of the signatories hereto and the transmission of an original signature page electronically (including by facsimile or portable document format) shall

constitute valid execution of the Stipulation as if all signatories hereto had executed the same document.  Copies of this Stipulation executed in counterpart shall constitute one agreement.

11.11.  This Stipulation, the Settlement, and any and all disputes arising out of or relating in any way to this Stipulation, whether in contract, tort, or otherwise, shall be governed by and construed in accordance with the laws of California without regard to conflict of laws principles.

11.12.  The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.  The Court shall retain exclusive jurisdiction to enforce all injunctions set forth herein.

11.13.  The Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties, and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

11.14.  Plaintiffs, Lead Counsel, PFA, LICS, Defense Counsel, and the attorneys, staff, experts, and consultants assisting them in this Action agree that (a) they will not intentionally assist or cooperate with any person or entity in the pursuit of legal action related to the subject matter of this Action against the Release Parties, and (b) they will not intentionally assist or cooperate with any person or entity seeking to publicly disparage or economically harm the Release Parties with respect to any matter relating to the subject matter of this Action.

11.15.  Lead Counsel may provide non-confidential, factual information in communications with the Claims Administrator, the Court, and Class Members, and, subject to Defendants' prior review and approval, which shall not be unreasonably withheld, place factual notices on Lead Counsel's website informing visitors of the Settlement and its status.  Information on Lead Counsel's website consistent with the Notice and any other Court-approved documents will not require Defendants' prior approval so long as such information is strictly factual in nature and does not disparage Defendants.  No Settling Party or counsel of a Settling Party shall make or cause to be made any disparaging remarks or derogatory statements concerning any other Settling Party or its counsel.  Lead Counsel shall not make any other public statements concerning the Action or the Settlement.

11.16.  All agreements by, between, or among the Settling Parties, their counsel, and their other advisors as to the confidentiality of information exchanged between or among them shall remain in full force and effect, and shall survive the execution and any termination of this Stipulation and the final consummation of the Settlement, if finally consummated, without regard to any of the conditions of the Settlement.

11.17.  The Settling Parties shall not assert or pursue any action, claim, or rights that any party violated any provision of Rule 11 of the Federal Rules of Civil Procedure in connection with this Action, the Settlement, or the Stipulation. The Settling Parties agree that the Action was resolved in good faith following arm's-length bargaining, in full compliance with applicable requirements of Rule 11 of the Federal Rules of Civil Procedure.

11.18.  Any failure by any of the Settling Parties to insist upon the strict performance by any other Settling Party of any of the provisions of the Stipulation

shall not be deemed a waiver of any of the provisions hereof, and such Settling Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by the other Settling Parties to this Stipulation.

11.19.  The waiver, express or implied, by any Settling Party of any breach or default by any other Settling Party in the performance of such Settling Party of its obligations under the Stipulation shall not be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

11.20.  The Settling Parties reserve the right (but not obligation), subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

11.21.  Plaintiffs warrant and agree that they have had ample opportunity to review, comment on, and approve all documentation in connection with this Settlement, have consulted with counsel, and enter into this Settlement voluntarily.

11.22.  All references to days herein refer to consecutive calendar days, including weekends and holidays.  When a deadline is pegged to a day, the deadline shall run at midnight Pacific time on such day, consistent with Federal Rule of Civil Procedure 6(a)(4)(A).

IN WITNESS WHEREOF, the Settling Parties have executed this Stipulation by their undersigned counsel effective as of the date set forth below.

Dated: March 17, 2023


By: _____
Daniel Girard
On behalf of Plaintiffs


By: _____
Timothy Crudo
On behalf of Premier Financial Alliance, Inc.



By: _____
Timothy Perla
On behalf of Life Insurance Company of the Southwest

Dated: March 17, 2023


By: _____
Daniel Girard
On behalf of Plaintiffs



By: _____
Timothy Crudo
On behalf of Premier Financial Alliance, Inc.



By: _____
Timothy Perla
On behalf of Life Insurance Company of the Southwest