1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE PFA INSURANCE MARKETING LITIGATION** | CASE NO.  4:18-cv-03771 YGR<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 356 |

Plaintiffs Dalton Chen and Youxiang Eileen Wang bring this class action against defendants Life Insurance Company of the Southwest ("LSW" or "LICS") and Premier Financial Alliance ("PFA") for state-law claims arising out of defendants' alleged endless chain scheme. Now pending is plaintiffs' motion for preliminary approval of a settlement agreement.  Docket No. 356.  The motion is opposed by Wenjian Gonzales and Rui Chen, who were named plaintiffs in the original iteration of the complaint filed on June 25, 2018.  Docket No. 358.  Gonzales and Chen are not named plaintiffs in the operative consolidated complaint.  *See* Docket No. 131.  On May 1, 2023, the Court directed plaintiffs to file a supplemental statement providing additional information regarding the settlement agreement.  Docket No. 361.  On June 1, 2023, plaintiffs filed a supplemental statement, as well as revised versions of the settlement agreement, proposed notices, and proposed claims forms, in response to the Court's order of May 1, 2023.  *See* Docket No. 364.

Having carefully considered the pleadings, the record, and the parties' briefs, the Court **GRANTS** plaintiffs' motion for preliminary approval.[1]

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that the motion is appropriate for decision without oral argument.  Therefore, the hearing noticed for July 25, 2023, is VACATED.

# I. BACKGROUND

## A. Procedural History

The factual and procedural background of this class action was set forth in detail in the Court's order granting in part and denying in part defendants' motions for summary judgment, Docket No. 306.

In short, LSW sells life insurance products through an alleged multilevel marketing scheme that is jointly operated by LSW and PFA. The alleged scheme targets immigrants and their families with promises of financial success derived from recruiting people to join PFA and selling the "Living Life policy" issued by LSW under the trade name National Life Group ("NLG"). Docket No. 131 ¶ 1. Plaintiffs allege that, pursuant to the alleged scheme, people wishing to participate in the alleged scheme pay a $125 fee to become a PFA associate with the goal of ultimately becoming licensed to sell the Living Life policy and profit financially from commissions from those sales. *Id.* ¶¶ 27, 32, 55, 58. After paying an initial membership fee of $125, PFA associates are advised that they cannot progress in PFA without buying the Living Life policy. *Id.* ¶ 56. PFA associates are also exposed to representations indicating that purchasing a Living Life policy will assist them in selling policies to others and in achieving success and personal wealth. *See, e.g., id.* ¶¶ 28-29, 33-34. PFA associates are exposed to representations indicating that the rewards that a PFA associate can reap from the alleged scheme increase as the PFA associate recruits more people to join PFA. *Id.* ¶¶ 61, 71-73. PFA associates are not told, however, that only those at the top of the PFA hierarchy will ever realize the level of financial success that is represented to PFA associates. *Id.* ¶¶ 75-76.

In the operative complaint, plaintiffs assert claims for violations of (1) the Endless Chain Scheme law, Cal. Penal Code § 327, as a predicate for their claim under the unlawful prong of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) the UCL under the unlawful and unfair prongs as to both defendants, and under the fraudulent prong as to PFA only; (3) the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. § 56:8-1, *et seq.*; in addition to (4) fraud as to PFA only; and (5) civil conspiracy.

United States District Court
Northern District of California

United States District Court
Northern District of California

On May 14, 2021, plaintiffs moved for certification of proposed classes under Rules 23(b)(2) and 23(b)(3) based on their claims under each of the three prongs of the UCL and the New Jersey Consumer Fraud Act.  On November 3, 2021, the Court granted the motion for certification under Rule 23(b)(3) as to a California subclass with respect to plaintiffs' claims under the unlawful and unfair prongs of the UCL.  *See* Docket No. 239.  The Court otherwise denied the motion without prejudice.  *See id.*

The California subclass that the Court certified under Rule 23(b)(3) is comprised of:

> All persons who enrolled as Premier[2] associates and purchased one or more Living Life[3] policies within California between January 1, 2014 and the present.[4]

*See* Order at 38, Docket No. 239.

On June 15, 2022, the Court granted in part and denied in part defendants' motions for summary judgment.  Docket No. 306.  With respect to the named plaintiffs' individual requests for prospective injunctive relief; plaintiffs' theory of liability against LSW predicated on the existence of a partnership between LSW and PFA; and named plaintiff Wang's individual claim for fraud against PFA, the Court granted the motions.  *Id.*  The balance of the motions was denied.  *Id.*

---

[2] "Premier" refers to PFA.

[3] Pursuant to the Court's order certifying the California subclass, the policies that determine membership in the California subclass are the Living Life policy and its successor policy, namely the Living Life by Design policy.  *See* Order at 10, Docket No. 239.

[4] Excluded from the subclass are defendants defined as LSW and PFA, "their parents, affiliates, subsidiaries, legal representatives, predecessors, successors, assigns, employees, any entity in which one of these Defendants has a controlling interest or which has a controlling interest in one of these Defendants, and relevant nonparties National Life Insurance Company, NLV Financial Corporation, Mehran Assadi, David Carroll, Jack Wu, Aggie Wu, Rex Wu, Hermie Bacus, Bill Hong, and Lan Zhang." Order at 38 n.9, Docket No. 239.  "Also excluded from the class are the legal representatives, successors, assigns, and immediate family members of Defendants and these relevant nonparties; all individuals who reached the level of Provisional Field Director, Qualified Field Director, Senior Field Director, Regional Field Director, Area Field Director, National Field Director, Executive Field Director or Senior Executive Field Director at PFA; and the judicial officers to whom this matter is assigned and their immediate family members and staff."  *Id.*

1    On August 16, 2022, the Court granted plaintiffs' motion to appoint Epiq Class Action &

2    Claims Solutions, Inc. as administrator of the proposed plan for providing notice to the certified

3    class but it deferred its approval of the proposed notice plan pending a further submission by the

4    parties.  Docket No. 323.

5    On September 8, 2022, after plaintiffs submitted additional information in support of their

6    proposed notice plan, the Court granted plaintiffs' motion for approval of their proposed notice

7    plan for disseminating the class notice.  Docket No. 328.  The Court found that plaintiffs'

8    proposed notice plan, which would involve disseminating the class notice via U.S. mail with skip

9    trace, is the best method practicable and satisfies the requirements of Rule 23(c)(2)(B).  *Id.* at 1-2.

10   The Court found that, in light of the quality and quantity of other available contact information for

11   LSW policyholders, employing a second method for disseminating the class notice would not

12   reasonably increase the rate at which members of the California subclass would receive it.  *Id.*

13   The Court also found that the parties' proposed "cross-reference list," *see* Docket No. 323 at 10-

14   11, which compares LSW records of policyholders' purchase of relevant policies in California

15   with PFA records of PFA associates, was reasonably likely to enable the identification of members

16   of the California subclass for the purpose of disseminating the class notice.  *Id.* at 2.  The Court

17   required plaintiffs to file a revised proposed notice that did not contain the deficiencies it

18   identified in its order of August 16, 2022.  *Id.*

19   On September 13, 2022, the Court approved plaintiffs' revised proposed notice and

20   authorized the administrator to proceed with disseminating the approved notice according to the

21   approved notice plan.  Docket No. 334.

22   On December 21, 2022, the Court granted a stipulation adjourning the obligation to mail

23   the class notice pursuant to the Court's order of September 13, 2022, on the ground that the parties

24   had entered into an agreement in principle to settle the action.  Docket No. 352.

25   On March 17, 2023, plaintiffs filed a motion for preliminary approval of a settlement

26   agreement the parties executed on the same date, March 17, 2023.  Docket No. 56.  On March 31,

27   2023, Rui Chen and Wenjian Gonzales filed objections to the settlement agreement.  Docket No.

28   358.

United States District Court
Northern District of California

On May 1, 2023, the Court issued an order directing plaintiffs to file additional information pertaining to the settlement agreement.  Docket No. 361.

On June 1, 2023, plaintiffs filed a supplemental statement and a revised version of the settlement agreement (which was executed on May 31, 2023), revised proposed notices, and revised proposed claim forms.  Docket No. 364.

**B.      Settlement Agreement**

The parties mediated in August 2022 under the supervision of Diane Welsh, a former magistrate judge in the Eastern District of Pennsylvania.  Docket No. 356 at 1.  Settlement negotiations continued for several months thereafter.  *Id.*  As noted, on March 17, 2023, the parties executed a stipulation and agreement of settlement.  Docket No. 356-2.  The parties modified the settlement agreement to address some of the questions and comments in the Court's order of May 1, 2023 (hereinafter, "SA").  *See* Docket No. 364-2.  The following is a brief summary of the SA's key terms.

**Settlement Class.**  The settlement class under the SA largely tracks the class definition of the California subclass that the Court certified under Rule 23(b)(3), with some exceptions that do not impact the Court's prior class certification analysis, as discussed in more detail below.  Class Counsel represent that there are approximately 22,000 Living Life and Living by Design policies purchased in California between January 2014 and March 2023 whose owner matches a name on the list of PFA associates, and that there are at most 13,000 people who fall within the definition of the settlement class (hereinafter, "class members").  *See* Girard Decl. ¶¶ 29, 32, Docket No. 356-1.

**Recovery under the SA.**  The SA gives eligible class members the option to receive cash payments pursuant to formulas that approximate the relief that plaintiffs could obtain if they prevailed at trial.  *See* Girard Decl. ¶ 33, Docket No. 356-1.  According to the SA, members of the settlement class who have a "Class Policy"[5] will be eligible to choose one of the two forms of

---

[5] "Class Policy" is defined under the SA as including the Living Life policies that determine class membership (i.e., Living Life policies that were purchased in California during the relevant time period), but that definition has exclusions that have the effect of narrowing the set of class members who would otherwise be eligible for relief under the SA; those exclusions are set

United States District Court
Northern District of California

relief: Active Policy Relief or Inactive Policy Relief.  *See* SA § 2.7.

Active Policy Relief is for eligible class members whose Class Policy is active in LSW's administration system as of the Relief Calculation Date, who submit a valid claim form, and who meet other criteria relating to whether certain types of benefits were paid under the policy.  *See* SA § 3.2.  Eligible class members who choose this type of relief will terminate their policy in exchange for a cash payment that will be calculated based on a formula that (1) takes the premiums paid by the class member on the policy, and (2) subtracts all of the following: an "expense factor" of 10% of the total premiums paid (with the "expense factor" being or reflecting LSW's expenses in connection with the policy); the cost of insurance charges; outstanding policy loans and interest that class members owe to LSW; amounts withdrawn by class members; and the "cash surrender value" of the policy.  SA § 3.3.  After subtracting all of those amounts from the premiums paid, class members will receive 67% of the remainder.  *Id.*

Inactive Policy Relief is for eligible class members whose Class Policy is lapsed or surrendered in LSW's administration system as of the Relief Calculation Date, who submit a valid claim form, and who meet other criteria relating to whether certain types of benefits were paid under the policy.  *See* SA § 3.5.  Eligible class members who select this type of relief will receive a cash payment that will be calculated based on a formula that (1) takes the premiums the class member paid on the policy, and (2) subtracts all of the following: an "expense factor" of 25% of the total premiums paid on the policy; the cost of insurance charges; and the total amount of withdrawal, partial surrender, or total surrender amounts already paid on the policy.  After subtracting all of those amounts, the class member will receive 67% of the remainder.  *See* SA § 3.6.

Class members whose policy does not satisfy the definition of Class Policy under the SA will not be eligible for either Active Policy Relief or Inactive Policy Relief even though, based on the terms of the SA, they will be included in the settlement class and will release claims under the SA if they do not exclude themselves.  The definition of "Class Policy" excludes (a) Living Life

forth in detail below.  *See* SA § 2.7.

Policies for which the insured is deceased; (b) Living Life Policies on which a claim for a death benefit was made or paid prior to the Stipulation Date; (c) Living Life Policies that were rescinded or not taken prior to the Stipulation Date; (d) Living Life Policies on which a full-election or partial election of any benefit under an Accelerated Benefits Rider ("ABR") was made or paid prior to the Stipulation Date; and (e) Living Life Policies that were sold or assigned to a non-Class Member prior to the Stipulation Date.  *See* SA § 2.7.

In its order of May 1, 2023, the Court ordered Class Counsel to provide additional information regarding the Class Policy limitation and on whether the Court can grant preliminary approval of the SA notwithstanding that limitation.  In their supplemental statement, plaintiffs explain that the purpose of the Class Policy limitation is to exclude class members who "have no colorable claim to damages[.]"  Docket No. 364 at 21.  Class Counsel have not provided an estimate of how many class members have a policy that does not fall within the definition of Class Policy.

The SA does not call for the creation of a settlement fund in the first instance.  Instead, the money that LSW will provide to the Claims Administrator for distribution to class members who submitted valid claims and are eligible for either type of relief under the SA will be based on the amounts that individual class members are owed according to LSW's calculations, as described in more detail below.

**How to Recovery under the SA Compares to Full Recovery.**  In its order of May 1, 2023, the Court required plaintiffs to provide more information in a supplemental statement that would enable a comparison between what class members are likely to receive under the SA and what they would have received had plaintiffs prevailed at trial, or if not possible, the analysis upon which they make this assessment.

In their supplemental statement, Class Counsel provide some additional information that they prepared with the assistance of their actuarial consultant, Philip J. Bieluch, using December 2022 data in LSW's records.  *See* Girard Decl. ¶¶ 5-6, 17, Docket No. 364-1.  The following chart shows the average recovery for the different types of eligible class members when compared to the average premium paid.

|  | Average premium paid | Average settlement payment | Median settlement payment |
|---|---|---|---|
| **Active policyholders** | $14,590 | $4,566 | $3,175 |
| **Inactive policyholders** | $4,355 | $1,310 | $672 |
| **Both active and inactive policyholders** | $12,371 | $3,860 | $2,500 |

Class Counsel also provide in their supplemental statement some case studies that compare the recoveries under the settlement for three representative active policyholders and three representative inactive policy holders relative to their potential recovery if they prevailed at trial. The case studies show that the recovery under the settlement for the representative class members ranges from 29% to 95% of their potential total recovery.  *See* Girard Decl. ¶¶ 5-6, Docket No. 364-1.

Class Counsel represent that, for about 16% of the approximately 22,000 policies at issue, the policies are unlikely to be rescinded by the class members who own them because the cash surrender values of the policies increased during the policy period to the point that the cash surrender value as of December 2022 would exceed the class member's projected recovery under the SA.  *See* Girard Decl. ¶ 12, Docket No. 364-1.  The increase in cash surrender value generally occurs because the insured paid premiums in excess of the amount needed to maintain the policy and experienced favorable returns under the index feature.  *Id.*  Class Counsel represent that the individuals who were most impacted by PFA's promotional practices do not have these policies. *Id.*  If those policies are excluded from the analysis, the remaining policies would result in a recovery for the class members who own them of up to $66 million under the SA, assuming 100% participation in the SA.  *Id.*  The amount recoverable by these same class members at trial would be $130 million.  *Id.*  Accordingly, for these class members, the recovery under the SA in relation to potential recovery at trial is 50.7%.  *Id.*  Class Counsel represent that the individuals who were most impacted by PFA's promotional practices fall within this group that does not include the policies whose cash surrender values increased during the policy period.  *Id.*

Class Counsel tentatively anticipate a claim rate of approximately 15% for inactive policyholder class members and a claim rate of approximately 10% for active policyholder class

members.  *See* Girard Decl. ¶ 55, Docket No. 356-1.  Class Counsel represent that claims rates in class actions typically fall within a range of 5% to 10% but there are several factors in this case that could result in a higher rate than that, namely the fact that the SA offers substantial recoveries, that the claim forms are simple and do not require supporting documentation, that the notice will be mailed via first class mail, and the fact that the events at issue in the action are relatively recent. *See* Girard Decl. ¶ 15, Docket No. 364-1.

**Procedure for Payments to Class Members.**  To receive relief under the SA, eligible class members must submit a completed claim form to the Claims Administrator within 90 days of the date on which the Court grants preliminary approval of the settlement.  SA § 6.6.  Claim forms may be submitted online or can be mailed, in which case the date of the postmark shall determine timeliness.  *See id.*  The Claims Administrator will provide an opportunity to class members who filed claims to cure any errors or deficiencies in their claim forms during the period beginning from the Effective Date and ending 60 days after the Effective Date.  SA § 6.7.  Effective Date is the date on which the SA and final judgment become final (after any appeals are resolved) and the action has been dismissed with prejudice.  SA § 9.8.  By the 90th day after the Effective Date, the Claims Administrator must provide the parties a set of all valid claim forms.  SA § 6.8.

In its order of May 1, 2023, the Court noted that the SA was silent as to when the amounts owed to class members would be calculated by LSW, the date on which such amounts would be paid to class members, and the date on which policies of class members selecting Active Policy Relief would be terminated.  The parties amended the SA to provide that, no later than 21 days after the Claims Administrator provides LSW with the list of valid claim forms, LSW shall, "pursuant to reasonable commercial efforts, terminate the Active Class Policies that have elected Policy Relief and calculate the amount of Policy Relief due to each eligible Class Member based on Valid Claim Forms."  SA § 6.9.  LSW shall thereafter disburse the total amount of policy relief to the Claims Administrator with a breakdown of the amount due to each eligible class member, and concurrently provide the Claims Administrator and Class Counsel with a spreadsheet in Excel form reflecting LSW's calculation of Policy Relief to each eligible Class Member.  SA § 6.9. Class Counsel declare that, pursuant to these revised provisions, LSW must disburse the total

United States District Court
Northern District of California

9

amount owed to class members within 21 days of receiving the Claims Administrator's determinations.  Girard Decl. ¶ 20, Docket No. 364-1.  Not later than 21 days from receipt of the LSW payment for the total Policy Relief, the Claims Administrator will issue the Policy Relief to eligible class members by mailing checks and processing electronic payments.  SA § 6.9; Girard Decl. ¶ 20, Docket No. 364-1.

**Non-Monetary Relief.**  Under the SA, PFA will be required to implement certain modifications to its sales practices, such as abstaining from using certain language or certain images that imply that joining PFA would result in financial success or wealth.  *See* Appendix A, Docket No. 356-3.  In their supplemental statement, plaintiffs represent that, although these modifications are prospective, class members could nevertheless benefit from them because, for example, the modifications may help class members assess similar sales plans and marketing pitches in the future.  *See* Docket No. 364 at 12.

**Release.**  In exchange for the benefits described above, class members who do not opt out of the SA will release claims that they asserted or could have asserted in this action.[6]  *See* SA § 2.26.

**Incentive Awards.**  Class Counsel represent that class representative Dalton Chen devoted considerable time to this matter since 2019 on tasks that included appearing for depositions, reviewing case materials, and searching for and producing documents for discovery purposes.  Girard Decl. ¶¶ 28-29, Docket No. 364-1.  Accordingly, the SA permits him to petition for an incentive award of $10,000.  SA ¶ 8.1.

**Class Witnesses.**  "Class Witnesses" Youxiang Eileen Wang, Donna Daniele, Shannon Xiao, and Yunhai Li, who are not class members because they did not purchase a policy in

---

[6] "Released Plaintiffs' Claims" means and includes any and all Claims that were or could have been included in the Action, including without limitation Claims relating in any way, directly or indirectly, to: (i) whether PFA or LICS operates as an endless chain, pyramid scheme, or similar legally prohibited structure; (ii) the business or business model of PFA or LICS, (iii) any disclosures or omissions relating to PFA or LICS, and/or (iv) marketing or sale of any Living Life Policies.  Notwithstanding the foregoing, "Released Plaintiffs' Claims" does not include: (i) Claims to enforce contractual rights to benefits that do not arise out of a Plaintiff Release Party's Claim; and (ii) Claims to enforce the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement.  SA § 2.26.

United States District Court
Northern District of California

California, also contributed valuable evidence in support of the prosecution and resolution of the action according to Class Counsel.  Girard Decl. ¶¶ 30-34, Docket No. 364-1.  The Class Witnesses will be permitted to participate in the settlement on the same terms as class members to resolve their individual claims.  *See* SA § 8.7.  Class Counsel represent that the payments to the Class Witnesses will have no impact on class member recoveries.  Girard Decl. ¶¶ 30-34, Docket No. 364-1.

**Cy Pres.**  Class Counsel represent that amounts remaining because of class members' failure to cash checks will be negligible and that a subsequent distribution to class members of those amounts would be "uneconomic."  *See* Girard Decl. ¶ 21, Docket No. 364.  Accordingly, the parties recommend that any residual funds that the Claims Administrator is unable to distribute following reasonable efforts be distributed to Bay Area Legal Aid, which has no association to Class Counsel, or another 501(c)(3) charitable non-profit organization having no affiliation with Class Counsel that the Court selects.  SA § 6.9; Girard Decl. ¶ 22, Docket No. 364.

**Method of Notice.**  The parties will disseminate notice to class members within 28 days of the date the Court grants preliminary approval.  The method that plaintiffs propose to use to provide notice to the settlement class is "the method previously approved by the Court."  Girard Decl. ¶ 44.  It involves sending notice by first-class mail to the last-known address of Living Life policyholders who purchased their policy in California during the relevant time period and whose name matches a name from the list of PFA associates.  SA §§ 5.3, 6.5.  The Claims Administrator will perform skip-traces and remailings for returned mail.  Plaintiffs represent that there are 13,105 unique addresses to which notices will be mailed.  However, because of possible duplicate entries and the exclusions to the definition of the settlement class (such as the exclusion of PFA members who reached high-level positions within PFA), plaintiffs estimate, as noted above, that there are at most 13,000 people who fall within the definition of the settlement class.  Girard Decl. ¶ 32, Docket No. 356-1.

The proposed notices, which the parties revised based on the Court's comments in its order of May 1, 2023, vary depending on whether class members have active policies versus inactive policies.  *See* Docket No. 364-3 (notice for inactive policyholders); Docket No. 364-4 (notice for

active policyholders).  Because many class members are not native English speakers, the revised proposed notices will be translated into several languages and the translated versions will be posted on the settlement website.  Girard Decl. ¶¶ 50, 58, Docket No. 356-1.  The revised proposed notices inform class members of the key terms of the SA, including the fact that those who do not own a Class Policy are ineligible to make a claim and will be bound by the release, and describe the characteristics of policies that do not qualify as Class Policies.  The revised proposed notices also state that, on the settlement website, class members can see an estimate of their settlement payment and that active policyholders, in addition to the estimate of their settlement payment, can also see the estimated cash surrender value of their policy.  The revised proposed notices contain instructions as to how to access these estimates.  The revised proposed notices inform class members as to how they can object to the SA and opt out.  The notices also instruct class members as to how to access additional materials relevant to the settlement on the settlement website and on the docket via PACER.

**Claim Forms.**  The proposed claim forms, which the parties revised based on the Court's comments in its order of May 1, 2023, vary depending on whether class members have active policies versus inactive policies.  *See* Docket No. 364-7 (claim form for inactive policy holders); Docket No. 364-8 (claim form for active policy holders).  The claims forms will be prepopulated with the policy numbers of all policies associated with the individual to whom the notices and claim forms are sent, so that a claimant can check a box next to the policy or policies for which he or she wishes to submit a claim under the SA.  The claim forms do not require any unnecessary information or information that would be burdensome to obtain.  Class members must submit claim forms no later than 90 days after the Court grants preliminary approval of the SA.  SA § 6.6. Class members may submit their claim forms by mail, in which case the postmark will serve as the date of submission.  SA § 6.6.  For those who wish to submit their claims online, class members can use the Unique ID number and PIN printed on their claim forms.  The claim forms will include a field for entering the class member's email address.  The Claims Administrator will send an email to those who submitted valid claims and provided email addresses on their claim form one week before distributions under the SA begin to ask whether the class members prefer to

receive their payment via direct deposit (ACH) or via paper check. The default method for disseminating payments under the SA will be a mailed paper check.

**Opt Outs.** Class members wishing to opt out of the SA must submit a request within 90 days of the date the Court grants preliminary approval of the SA. In response to the Court's Order of May 1, 2023, the parties amended the opt-out procedure so that a Class member who wishes to opt out need only provide their policy number (which will be printed on the claim forms, as noted above) or the last four digits of his or her social security number, in addition to name, address, signature, and statement of intent to opt out. Class Counsel represent that policy or social security number information is needed for class members to affirmatively opt out because a non-trivial number of class members have the same or similar names. *See* Girard Decl. ¶ 41, Docket No. 364-1. Class members who wish to opt out will be able to transpose their policy number from the claim form to their opt-out communication. *See* Girard Decl. ¶ 37, Docket No. 364-1.

The SA contains an opt-out threshold that permits LSW to terminate the SA if the total premiums paid by class members who exclude themselves total at least $13,000,000. SA § 9.2.

**Attorneys' Fees and Costs.** The SA provides that Class Counsel may petition for attorneys' fees of up to $6,000,000, and costs of up to $371,000. SA § 7.1. These amounts are to be paid by defendants within fifteen days of the date the Court approves them. SA § 7.3. Class Counsel declare that their lodestar to date is $7,133,014. Girard Decl. ¶ 47, Docket No. 364-1. The SA contains a clear-sailing provision, meaning that defendants agreed not to oppose Class Counsel's motion for fees. SA §§ 7.1, 7.2. The SA also provides that, if the Court awards attorneys' fees in an amount that is less than $6,000,000, then the difference will revert to defendants (i.e., the SA contains a so-called "kicker" clause). SA § 7.4.

**Claims Administrator.** The parties selected Epiq Class Action & Claims Solutions, Inc. to administer the SA. SA § 2.3. Defendants will pay up to $200,000 in administrative expenses. SA § 6.1. Class Counsel selected Epic in light of its experience administering claims in other complex cases and given that its bid was substantially similar to the bids it received from other potential claims administrators. Girard Decl. ¶¶ 43-44, Docket No. 364-1. The Court previously approved the parties' selection of Epiq to distribute class notice. *See* Docket No. 334.

United States District Court
Northern District of California

**Class Action Fairness Act.** Each defendant filed a declaration providing that it mailed notice of the proposed settlement agreement to the appropriate federal and state officials on March 21, 2023, *see* Docket No. 362, and March 24, 2023, *see* Docket No. 363, respectively.

**Other Cases Affected by the SA.** Plaintiffs represent that the parties not aware of other cases will be affected by the SA. *See* Docket No. 364 at 20.

## II.   LEGAL STANDARD

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

The approval of a settlement involves a preliminary approval stage, after which the court directs notice to class members and then holds a fairness hearing to determine whether final approval of the settlement agreement is warranted. At the preliminary approval stage, a court may order the dissemination of notice to the class only if the court finds that it will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." *See* Fed. R. Civ P. 23(e)(1)(B).

## III.   DISCUSSION

### A.   Class Certification

A court may certify a settlement class if all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) has also been met. *See* Fed. R. Civ. P. 23(a) & (b). As noted above, the Court previously certified the California subclass under Rule 23(b)(3). Where, as here, the Court is evaluating a settlement under Rule 23 and it previously certified a class under Rule 23(b)(3), the Court must consider only "whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.

United States District Court
Northern District of California

Here, the settlement class differs from the class that was certified in a few respects. The Court certified under Rule 23(b)(3) the following California subclass with respect to plaintiffs' claims under the unlawful and unfair prongs of the UCL:

> "All persons who enrolled as Premier associates and purchased one or more Living Life or Living Life by Design policies within California between January 1, 2014 **and the present**."

*See* Order at 38, Docket No. 239 (emphasis added). Excluded from the class were:

> Defendants Life Insurance Company of the Southwest ("LSW") and Premier Financial Alliance ("PFA"),heir parents, affiliates, subsidiaries, legal representatives, predecessors, successors, assigns, employees, any entity in which one of these Defendants has a controlling interest or which has a controlling interest in one of these Defendants, and **relevant nonparties National Life Insurance Company, NLV Financial Corporation, Mehran Assadi, David Carroll,** Jack Wu, Aggie Wu, Rex Wu, Hermie Bacus, Bill Hong, and Lan Zhang. Also excluded from the class are the legal representatives, successors, assigns, and immediate family members of Defendants and these relevant nonparties; all individuals who reached the level of Provisional Field Director, Qualified Field Director, Senior Field Director, Regional Field Director, Area Field Director, National Field Director, Executive Field Director or Senior Executive Field Director at PFA; and the judicial officers to whom this matter is assigned and their immediate family members and staff."

*See* Order at 38 n.9, Docket No. 239 (emphasis added).

The settlement class is the following:

> "All Persons who: (i) enrolled as PFA associates **between January 1, 2014 and the Stipulation Date** and (ii) purchased one or more Living Life Policies within California between January 1, 2014 **and the Stipulation Date of March 17, 2023**."

Excluded from the settlement class are:

> (a) all individuals who reached the level of Provisional Field Director, Qualified Field Director, Senior Field Director, Regional Field Director, Area Field Director, National Field Director, Executive Field Director, or Senior Executive Field Director at PFA; (b) the judicial officers to whom this matter is assigned and their immediate family members and staff; (c) Defendants, their parents, affiliates, subsidiaries, legal representatives, predecessors, successors, assigns, employees, and any entity in which one of these Defendants has a controlling interest or which has a controlling interest in one of these Defendants; (d) Jack Wu, Aggie Wu, Rex Wu, Hermie Bacus, Bill Hong, Lan Zhang, **and their legal representatives, successors, assigns, and immediate family members; (e) any Person who previously released any**

**Defendant pertaining to any Released Claim**; and (f) any Person who submits a valid request to be excluded from the Class in accordance with this Stipulation.

*See* Docket No. 356 at 7 (emphasis added).

As shown in bold above, the differences between the class that was certified and the settlement class are that the settlement class (1) includes a date range for when persons enrolled as PFA associates, whereas the certified class did not; (2) sets the Stipulation Date of March 17, 2023, as the end of the time period for the class definition, whereas the certified class does not; (3) does not exclude nonparties National Life Insurance Company, NLV Financial Corporation, Mehran Assadi, and David Carroll, as the certified class did; (4) excludes the legal representatives, successors, assigns, and immediate family members of Jack Wu, Aggie Wu, Rex Wu, Hermie Bacus, Bill Hong, and Lan Zhang, whereas the certified class did not; and (5) excludes any person who previously released any Defendant pertaining to any Released Claim.

In their supplemental statement, plaintiffs have adequately explained why the differences between the certified class and the settlement class do not warrant undertaking a new class certification inquiry for the purpose of approving the SA.  Docket No. 364 at 15.  As to the first difference noted above, plaintiffs explain that specifying a date range for when persons enrolled as PFA associates is consistent with the definition of the class that was certified (that definition requires that persons have enrolled as PFA associates and purchased a policy within California "between January 1, 2014 and the present") and is for the purpose of making it easier for class members to understand the class membership requirement and whether they qualify.

As to the second difference, plaintiffs explain that an end date is necessary to ascertain the scope of the class for the purpose of entering a final judgment.  *See id.*

As to the third difference, plaintiffs explain that the settlement class need not exclude nonparties National Insurance Company, NLV Financial Corporation, and their principal executives because they are already excluded under other exclusionary clauses of the settlement class definition.  *See id.*

As to the fourth difference, plaintiffs explain that the settlement class excludes Jack Wu, Aggie Wu, Rex Wu, Hermie Bacus, Bill Hong, and Lan Zhang because those individuals were in

United States District Court
Northern District of California

the uppermost rungs of the PFA hierarchy and the parties agreed that they should not be part of the class for the same reasons that high-level PFA associates are excluded.  Additionally, the parties also agreed that family members, legal representatives, successors, and assigns of these individuals have sufficiently similar interests to warrant their exclusion, as well.  *See id.* at 16.

As to the fifth difference, plaintiffs explain that it is appropriate to exclude from the settlement class persons who previously released a defendant as to any Released Claim because such persons are routinely excluded from class definitions to promote finality and avoid duplicative recoveries.  *See id.*

The Court is persuaded by plaintiffs' explanations and finds that the differences between the certified class and the settlement class do not alter the reasoning underlying the Court's grant of certification to the California subclass under Rule 23(b)(3).  Accordingly, the Court need not conduct a new class certification analysis with respect to the settlement class the purpose of approving the settlement agreement.  *See, e.g.*, *Youth Just. Coalitions v. City of Los Angeles*, No. 16-07932, 2020 WL 9312377, at *2 (N.D. Cal. Nov. 17, 2020) (approving settlement class definition that expanded and clarified who was in the class because the "change does not alter the reasoning underlying its earlier decision to grant class certification"); *Foster v. Adams & Assocs.*, Inc., No. 18-CV-02723-JSC, 2021 WL 4924849, at *3 (N.D. Cal. Oct. 21, 2021) (same with respect to change to certified class that set an end date for the class definition).

Accordingly, the Court finds that it will likely be able to "certify the class for purposes of judgment on the [settlement] proposal."  *See* Fed. R. Civ P. 23(e)(1)(B).

### B.    Likelihood of Approval

In determining whether the Court will likely be able to approve the SA under Rule 23(e)(2), the Court must consider the factors set forth in that rule to determine whether the settlement is fair, reasonable, and adequate, namely whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's

17

length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).[7]

For the reasons set forth below, the Court finds that it is likely to approve the SA under Rule 23(e)(2).

### 1.    Adequate Representation

The Court finds that Class Counsel have adequately represented class members throughout this litigation, and that this factor weighs in favor of granting preliminary approval.

After conducting substantial discovery and bringing several successful discovery motions[8], Class Counsel successfully obtained certification of the California subclass and largely defeated defendants' motions for summary judgment.  Prior to the settlement, the parties were scheduled to go to trial.  In light of the success that Class Counsel have achieved to date on behalf of the class, their substantial experience in prosecuting other complex class actions, and the substantial discovery that Class Counsel have conducted to date, the Court finds that Class Counsel were well informed about the strengths and weaknesses of class members' claims before and during their settlement negotiations and are well-positioned to negotiate a fair settlement on behalf of the settlement class.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("[W]e

---

[7] Courts in this district often rely on judicially-created factors for examining the reasonableness and adequacy of a settlement agreement, even after Rule 23 was amended in December 2018 "to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'"  *See Briseno v. Henderson*, 998 F.3d 1014, 1025-26 (9th Cir. 2021).  However, in *Briseno*, the Ninth Circuit encouraged district courts to "follow the law that Congress created" when evaluating a settlement agreement under Rule 23 rather than relying on "judicially manufactured factors."  *See id.* (noting that "Congress provided district courts with new instructions" in the revised Rule 23(e) "that require them to go beyond our precedent" and that "we must follow the law that Congress enacted").  Accordingly, the Court guides its analysis here based on the factors set forth in Rule 23(e).

[8] According to Class Counsel, the parties began discovery in mid-2020 and defendants produced over 85,000 documents in discovery, which plaintiffs reviewed and analyzed.  Girard Decl. ¶¶ 7-16, Docket No. 356-1.  Plaintiffs also gathered and produced voluminous documents in response to defense requests.  The parties took twenty-one depositions of fact witnesses, and six expert depositions.  Among other discovery proceedings, the parties litigated disputes concerning: PFA's production of documents responsive to plaintiffs' first set of requests and PFA's compliance with the ESI guidelines; PFA's production of its executive chairman Jack Wu for deposition; LSW's production of class member identification data; LSW's production of its CEO for deposition; and extending the fact discovery cutoff so plaintiffs could pursue the deposition of Jack Wu and their subpoena enforcement action involving Steven Early.  *See id.*

United States District Court
Northern District of California

1    have held that [p]arties represented by competent counsel are better positioned than courts to

2    produce a settlement that fairly reflects each party's expected outcome in litigation" and that this

3    weighs "in favor of approval") (citation and internal quotation marks omitted).

### 2.    Whether the SA Was Negotiated at Arm's Length

5    The parties conducted a mediation overseen by a retired judge in August 2022.  Girard

6    Decl. ¶ 22, Docket No. 356-1.  Following the mediation, the case proceeded on two tracks, with

7    the parties' counsel preparing for trial and concurrently negotiating toward a settlement.  *Id.* ¶ 23.

8    To mitigate LSW's informational and experiential advantages, and for assistance on the actuarial

9    aspects of the negotiations, Class Counsel consulted Philip J. Bieluch, an actuarial consultant

10   specializing in life insurance product development and reinsurance.  *Id.* ¶ 25.  On December 16,

11   2022, the parties signed a detailed term sheet, *id.* ¶ 24, and they entered into the settlement

12   agreement on March 17, 2023, *id.* ¶ 27.  The parties subsequently revised some aspects of the

13   settlement agreement in response to the Court's comments in its order of May 1, 2023.  Class

14   Counsel declare that the protracted nature of the settlement negotiations is attributable to several

15   factors, which include the hard bargaining between the parties, the developed evidentiary record,

16   the lack of ready models for resolution of "endless chain" claims in the insurance sales context,

17   and the need to accommodate the preferences of all class members, including those who prefer to

18   retain their policies.  *Id.* ¶ 26.

19   Additionally, Class Counsel declare that they negotiated their fees and costs only after the

20   parties had agreed on all other material terms.  Girard Decl. ¶ 46, ECF No. 364-1.  Class Counsel

21   agreed to waive any enhancement to their lodestar and, in exchange for the waiver of any

22   enhancement, LSW agreed not to oppose Class Counsel's agreed fee.  *Id.*  Class Counsel further

23   declare that the agreement as to fees is the product of the parties' "hard bargaining and best efforts

24   to arrive at an arm's length settlement as to attorney's fees."  *Id.* ¶ 45.

25   The Court finds that the participation of a neutral mediator and of an actuarial consultant in

26   the settlement discussions, the back-and-forth between the parties as to the terms of the settlement,

27   and the parties' decision to negotiate attorneys' fees and costs until after they had agreed on all

28   other material terms of the SA indicate that the SA is the product of arms' length negotiations.

United States District Court
Northern District of California

*See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (holding that participation of a mediator is not dispositive but is "a factor in favor of a finding of non-collusiveness"); *see also Youth Just. Coalitions v. City of Los Angeles*, No. 216CV07932VAPRAOX, 2020 WL 9312377, at *3 (C.D. Cal. Nov. 17, 2020) ("The sustained back and forth negotiations between the parties indicate that the Settlement Agreement was the result of a process that was fair and full of adversarial vigor.") (citation and internal quotation marks omitted).  The Court has carefully reviewed the record, including the supplemental submissions that plaintiffs filed after the Court asked for additional information in its order of May 1, 2023, and it sees no indication of fraud, overreaching, or collusion.  Accordingly, the Court finds that this factor weighs in favor of granting preliminary approval.  The SA's provisions relating to Class Counsel's attorneys' fees and costs (e.g., the clear-sailing provision and the kicker provision) do not alter this finding, for the reasons discussed in more detail below.

> ### 3. Whether the SA Treats Class Members Equitably Relative to Each Other

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (citation and internal quotation marks omitted).  "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Id.*

Plaintiffs argue that the SA treats class members equitably based on the extent of their injuries or the strength of their claims on the merits and that it is, therefore, fair, reasonable, and adequate.  The Court agrees.

Class members who have a Class Policy will have the option to receive a payment under the SA under the Active Policy Relief or Inactive Policy Relief provisions, depending on whether they have an active policy or inactive policy.  Class members with an active Class Policy who opt to receive a payment under the SA will terminate their policy.  Class members with an active Class Policy who wish to retain it for any reason, including because the cash surrender value of

their policy is greater than their expected payment under the SA, will be able to retain it by not submitting a claim form.

Payments for eligible class members who opt to receive a payment under the SA will be calculated based on formulas for active and inactive policies that are set forth in the SA and are described in detail in the background section of this order.  According to Class Counsel, the formulas approximate the remedy that class members with active and inactive Class Policies, respectively, would have received under the statute that permits a participant to an endless chain scheme to rescind the contract upon which the scheme is based, Cal. Civ. Code § 1689.2. Pursuant to that statute, class members would be able to "recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme" if they prevailed at trial.  Docket No. 356 at 15.  Plaintiffs argue that the SA approximates the optional rescission process under § 1689.2 because it "obligates the Defendants to return a portion of the premiums paid by Class Member claimants, according to a formula that subtracts cost of insurance and other policy charges from the total premiums paid, and then applies a one-third discount." *Id.* at 8.  The SA's formulas differ most saliently between inactive and active policies in that the "expense factor" to be subtracted from a claimant's recovery will be 25% of the total premiums paid on an inactive Class Policy, whereas it will be only 10% for an active Class Policy.  Class Counsel represent that the expense factor difference between the inactive and active policies is equitable because "the cost to the insurer of rescinding a policy in the first few years . . . is exponentially greater then than later, given that it typically requires a period of several years for the insurer to recover the substantial commission due to the selling agent.  Thus, Plaintiffs conceded a greater deduction from the total payment to inactive policyholder claimants, as the inactive policies generally were in force less time."  Girard Decl. ¶ 38, Docket No. 356-1.

The Court finds that the SA treats class members with inactive Class Policies equitably relative to those with active Class Policies.  The formulas based on which payments will be calculated will compensate each claimant commensurate with the actual loss they experienced in a manner that approximates the relief they could have obtained under § 1689.2 had they prevailed at

United States District Court
Northern District of California

1    trial.  The Court is persuaded that the difference in the formulas' expense factor for active policies

2    versus inactive policies is justified by the fact that inactive policies resulted in greater costs for the

3    insurer relative to active policies.

4         As noted above, class members who do not have a Class Policy as defined in the SA will

5    not be eligible for any relief under the SA even though they will release their claims if they do not

6    opt out.  As noted, the definition of "Class Policy" excludes (a) Living Life Policies for which the

7    insured is deceased; (b) Living Life Policies on which a claim for a death benefit was made or paid

8    prior to the Stipulation Date; (c) Living Life Policies that were rescinded or not taken prior to the

9    Stipulation Date; (d) Living Life Policies on which a full-election or partial election of any benefit

10   under an Accelerated Benefits Rider ("ABR") was made or paid prior to the Stipulation Date; and

11   (e) Living Life Policies that were sold or assigned to a non-Class Member prior to the Stipulation

12   Date.  *See* SA § 2.7.

13        In its order of May 1, 2023, the Court ordered plaintiffs to explain the purpose of limiting

14   the relief offered by the SA to settlement class members who have a Class Policy and to

15   demonstrate that this limitation would not result in preferential treatment to some class members

16   at the expense of others.  In their supplemental statement, plaintiffs argue that their proposed

17   allocation plan is reasonable and does not preclude granting approval of the SA because class

18   members who do not have a Class Policy "have no colorable claim to damages[.]"  *See* Docket

19   No. 364 at 21.  Plaintiffs explain that the purpose of the Class Policy limitation is to "exclude[]

20   scenarios where the policyholder has received or is in the process of receiving benefits under the

21   policy, never purchased the policy in the first place, or disposed of the policy.  In the case of

22   individuals who have received or are in the process of receiving benefits, they are better served

23   keeping the policy and receiving the death benefit.  The individuals who paid no money for a

24   policy or had their policy rescinded have nothing to rescind.  Similarly, those who disposed of

25   their policy by sale or assignment cannot rescind a policy they no longer own."  *See id.*

26        The Court finds plaintiffs' representations as to the relative value of the claims of class

27   members who do not have a Class Policy to be persuasive, particularly given that Class Counsel

28   retained an actuarial consultant to assist them with the actuarial aspects of the settlement

negotiations.  Girard Decl. ¶ 25, Docket No. 356-1.  Based on those representations, the Court finds that plaintiffs' proposal to limit relief under the SA to class members who had a Class Policy is reasonable and equitable because it is based on the relative value of class members' claims.  *See In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *14 (N.D. Cal. July 7, 2016) ("Class counsel here were within their rights to allocate the settlement proceeds according to the degree of injury suffered by the class" because "no Ninth Circuit case holds that the release of a class action claim must be compensated in all instances") (citations omitted); *see also Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.") (citation and internal quotation marks omitted).  Further, if class members who do not have a Class Policy believe that their claims "actually have value, [they] can demonstrate that fact during the objection process (or timely opt out)."  *In re Cathode Ray Tube*, 2016 WL 3648478, at *14.

The Court finds that the SA's provisions that allow the class representative to apply for an incentive award of $10,000, and that allow the Class Witnesses (who, as noted, are not class members) to participate in the settlement on the same terms as class members, do not preclude the Court from granting preliminary approval of the SA.  The recovery of the class representative and the Class Witnesses will not impact the recovery of class members, and plaintiffs have shown that the benefits that the class representative and Class Witnesses can obtain under the SA are warranted in light of their contributions to the prosecution of this action.  The proposed notices inform class members of these terms of the SA.  Class members may file objections or opt out if they believe that the treatment of the class representative and Class Witnesses under the SA is unreasonable.

In light of the foregoing, the Court finds that this factor weighs in favor of granting preliminary approval.

### 4.  Whether the Relief Provided to the Class is Adequate

In considering whether the relief provided to the class pursuant to the settlement agreement is adequate, the Court must take into account: (i) the costs, risks, and delay of trial and appeal; (ii)

United States District Court
Northern District of California

the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C).

Here, as discussed above, in exchange for releasing claims that were or could have been asserted in the action, class members with a Class Policy will receive the option of selecting Active Relief or Inactive Relief. Those who select it will receive a payment under the settlement based on formulas that are uniformly applied based on whether a class member has an active policy or an inactive policy, and which take into account class members' individual circumstances and the relative strength of their claims for relief (e.g., the premiums they have paid on their policies, the benefits they have received to date). Class Members who do not have a Class Policy will not be eligible for relief under the SA because, according to Class Counsel's representations, those class members do not have colorable claims for relief, as discussed above.

Because the SA is a claims-made settlement, the parties will not know definitively the number of claims filed under the settlement, or the value of the relief to be accorded to those class members who opted to file claims, until the deadline for filing claims has expired (the deadline for filing claims is 90 days after the Court grants preliminary approval). Accordingly, Class Counsel provided estimates of the potential recovery under the SA. Class Counsel believe that approximately 16% of the approximately 22,000 policies at issue are unlikely to be rescinded by the class members who own them because the policy cash surrender values increased during the policy period to the point that the cash surrender value as of December 2022 would exceed the policyholders' projected recovery under the SA. *See* Girard Decl., ¶ 12, Docket No. 364-1. Class Counsel estimate that, after excluding those policies, the aggregate recovery for settlement class members would be up to $66 million, assuming 100% participation in the SA. Girard Decl. ¶ 12, Docket No. 364-1. The amount recoverable for those same policies at trial would have been $130 million. *See id.* Accordingly, for those policies, the settlement recovery in relation to the potential total recovery at trial is 50.7%. *See id.* Class Counsel also provided some detailed case studies in their supplemental statement, which compare the settlement recoveries of a few

United States District Court
Northern District of California

representative class members relative to their potential recoveries if plaintiffs were to prevail at trial; these case studies indicate that the SA will permit those class members to recover from 29% to 95% of their potential total recovery.  *See* Girard Decl. ¶¶ 5-6, Docket No. 364-1.

The Court finds, based on these estimates, that the relief provided to class members under the SA is adequate when considering the Rule 23(e)(2)(C) factors, which the Court discusses in turn below.

**a.      Costs, risks, and delay of trial and appeal**

As noted above, the parties settled this action several weeks before their jury trial was set to begin.  Class Counsel represent that, in light of the significant risks involved with proceeding to trial and a possible appeal, the settlement of the plaintiffs' claims under the terms now before the Court would be in the best interest of the class members.  Class Counsel explain that some of the risks the class members would face at trial include the risk that a jury or the Court would: attribute the class representative's lack of success with PFA to inadequate efforts or sales skill; find that PFA adequately disclosed the risks of failure and the importance of individual effort; find that PFA did not operate as an Endless Chain Scheme; conclude LWS is not liable for the conduct of PFA or its associates; find that any improprieties by PFA associates were independent actions, not undertaken in accordance with PFA or LSW guidelines provided to the associates; exclude or disregard evidence favorable to plaintiffs on the basis that sales materials, including audio and video recordings, were never approved by PFA or LSW; or agree with LSW that California's 10-30 day "free-look" period gave buyers adequate time to rethink their purchase of a policy, assuming it was motivated by a desire to advance in the PFA hierarchy.  Girard Decl. ¶ 7, Docket No. 364-1.

Some of the risks that plaintiffs would face on appeal include the potential for a Ninth Circuit panel to accept PFA's legal contention that plaintiffs lack standing because they did not seek any redress against PFA, or LSW's class certification arguments: (a) that individual issues connected to particular policy purchases, such as different face values and premium payments, underlie each separate claim, (b) that different PFA members bought a policy for many different reasons, or (c) that the putative class sweeps in those who suffered no injury.  Girard Decl. ¶ 8,

1   Docket No. 364-1.  Accordingly, for the purpose of negotiating the SA, Class Counsel assumed an

2   even probability of prevailing at trial and a slightly better than even chance of prevailing on

3   appeal, equating to an approximately one-third chance of securing a favorable final judgment.

4   Girard Decl. ¶ 6, Docket No. 364-1.

5          Class Counsel believe that settling the class members' claims pursuant to the SA is

6   superior to proceeding to trial for the additional reason that proceeding to trial could delay class

7   members' payments for at least two to three years when compared to receiving payments under

8   the settlement on a relatively fixed timeline.  Girard Decl. ¶ 11, Docket No. 364-1.

9          The Court is persuaded by Class Counsel's evaluation of the risks of proceeding to trial

10  relative to the benefits of resolving plaintiffs' claims pursuant to the SA and finds that, in light of

11  those significant risks, the recovery obtained under the SA is reasonable and adequate.  This

12  weighs in favor of granting preliminary approval of the SA.

13                    **b.      The proposed method of distributing relief to the class**

14         Class Members who have a Class Policy will have 90 days from the date on which

15  preliminary approval is granted to submit a claim.  SA § 6.6.  Claim forms may be submitted

16  online or they can be mailed, in which case the date of the postmark shall determine timeliness.

17  *See id.*  As noted above, the parties revised the proposed claim forms in response to the Court's

18  comments in its order of May 1, 2023.  The revised claim forms are easy to understand and fill

19  out, and do not require class members to provide unnecessary information or information that

20  could be burdensome to collect.  *See* Docket Nos. 364-7 & 364-8.  Class Members who submitted

21  claims will be provided with a sixty-day period during which they can cure any deficiencies in

22  their claim forms, which will begin on the Effective Date and end 60 days after the Effective

23  Date.  SA § 6.7.  By the 90th day after the Effective Date, the Claims Administrator must provide

24  the parties a set of all valid claim forms.  SA § 6.8.

25         As noted above, in response to the Court's order of May 1, 2023, the parties amended the

26  SA to provide definite dates for when payments to class members must be calculated by LSW

27  and for when payments to class members must be distributed.  Specifically, no later than 21 days

28  after the Claims Administrator provides LSW with the list of valid claim forms, LSW must

United States District Court
Northern District of California

United States District Court
Northern District of California

terminate the Active Class Policies and calculate the amounts due to each class member who submitted a valid claim form and then must disburse the total amount of policy relief to the Claims Administrator with a breakdown of the amount due to each eligible class member.  SA § 6.9.  LSW must concurrently provide the Claims Administrator and Class Counsel with a spreadsheet in Excel form reflecting its calculations.  *Id.*  Not later than 21 days from receipt of the LSW payment for the total policy relief, the Claims Administrator will issue the Policy Relief to eligible class members via the default method of mailing checks, or by direct deposit for those class members who provided an email address in their claim form and opted to receive their payment by direct deposit (ACH).  SA § 6.9; Girard Decl. ¶ 20, Docket No. 364-1.

Amounts remaining because checks were not cashed will be distributed to Bay Area Legal Aid (BALA), which is not affiliated with Class Counsel, or another 501(c)(3) charitable non-profit organization having no affiliation with Lead Counsel or Plaintiffs as the Court may approve.  SA § 6.9; Girard Decl. ¶ 22, Docket No. 364.  Given the broad nature of the legal relief BALA provides to the community, the Court finds a sufficient connection with the underlying matter to warrant the distribution.

The Court finds that the proposed method of distributing relief to the settlement class is reasonable and weighs in favor of granting preliminary approval of the SA.

### c.    The terms of any proposed award of attorneys' fees

Rule 23(e) requires courts to "balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members."  *Briseno*, 998 F.3d at 1024.  This requires scrutinizing the settlement agreement for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'"  *Id.* at 1023.  Such subtle signs exist: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing" arrangement providing that defendants will not oppose class counsel's request for fees; and (3) when the parties arrange for fees not awarded to class counsel to revert to defendants rather than to the class members (i.e., when the settlement contains a so-called "kicker" clause).  *Id.*  Where any of these signs are present, the district court must "examine the negotiation process

1   with even greater scrutiny than is ordinarily demanded" and the "approval of the settlement [must]

2   be supported by a clear explanation" of why the negotiated attorneys' fee is justified and "does not

3   betray the class's interests." *In re Bluetooth*, 654 F.3d at 949.

4        Here, as noted above, the SA provides that Class Counsel may request an award of up to

5   $6,000,000 in fees and costs of up to $371,000. The SA contains a "quick pay" provision, because

6   the SA requires defendants to pay fees and costs to Class Counsel within 15 days of the date the

7   Court approves them. The SA contains both a clear-sailing provision and a "kicker" provision.

8        The "quick pay" provision of the SA does not weigh against granting preliminary

9   approval. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-MD-1827 SI, 2011 WL

10  7575004, at *1 (N.D. Cal. Dec. 27, 2011) ("With respect [to] the 'quick pay' provisions, Federal

11  courts, including this Court and others in this District, routinely approve settlements that provide

12  for payment of attorneys' fees prior to final disposition in complex class actions.").

13       The presence of the clear-sailing and kicker provisions require the Court to examine the

14  SA and the negotiations leading to it closely for signs that the parties colluded at the class

15  members' expense. Here, as discussed in more detail above, the Court has found no indication of

16  collusion or that the settlement negotiations were not conducted at arm's length. The Court also

17  finds no evidence that the SA's clear-sailing and kicker provisions indicate that Class Counsel

18  negotiated an unreasonably high award of fees and costs for themselves at the expense of the class

19  members. This is because the maximum amount in fees and costs that Class Counsel may apply

20  for under the terms of the SA does not appear to be disproportionate to the benefits that class

21  members can obtain under the SA. As discussed above, the estimates that Class Counsel have

22  provided suggest that, after excluding policies that are unlikely to be rescinded, eligible class

23  members who own the remaining Class Policies could recover up to $66 million in the aggregate,

24  assuming 100% participation. Girard Decl., ¶ 12, Docket No. 364-1. That amount represents

25  50.7% of the amount that class members could have recovered if they prevailed at trial. *See id.*

26  An award in fees and costs of $6,371,000 would not be disproportionate or unreasonably high

27  relative to an aggregate class recovery that is estimated to be in the vicinity of $66 million,

28  particularly where, as here, Class Counsel's lodestar to date, $7,133,014, is comparable to their

United States District Court
Northern District of California

1   maximum possible award under the SA.  *See* Girard Decl. ¶ 47, Docket No. 364-1.  Where, as

2   here, there is no evidence of collusion and the attorneys' fees and costs at issue are not

3   disproportionate to the class members' recovery under the settlement, the presence of a clear-

4   sailing provision or kicker clause does not preclude granting approval of a settlement.  *See In re*

5   *Bluetooth*, 654 F.3d at 949; *Briseño*, 998 F.3d at 1026-28.

6           That being said, the question of whether the Court can grant *final* approval of the SA,

7   which is a claims-made settlement, will depend on the class members' *actual* recovery, which can

8   be determined only after the class members file claims.  *See Briseño*, 998 F.3d at 1020, 1026-28

9   (reversing final approval of a claims-made settlement that provided for an award of attorneys' fees

10  and costs of approximately $6 million in relevant part because, prior to final approval, the parties

11  represented that the class members could receive $67.5 million in the aggregate if every class

12  member filed a claim, but based on the claims that were actually filed, class members received

13  only about $1 million in the aggregate, which the Ninth Circuit found to be disproportionate

14  relative to the award of fees and costs).  Here, the parties will not know definitively the number of

15  claims submitted, or the value of the relief to be accorded to those class members who opted to

16  submit claims, until the deadline for filing claims has passed.  The class members' actual recovery

17  in the aggregate could turn out to be much less than the estimated aggregate recovery of $66

18  million, which assumes a 100% participation rate.  If that is the case, then Class Counsel will have

19  to make a showing in their motion for final approval of the SA that their requested fees and costs,

20  which will not be opposed by defendants, are not unreasonably high relative to the benefits

21  conferred to the class and do not preclude the Court from granting final approval of the SA.  *See*

22  *Briseño*, 998 F.3d at 1020, 1026-28; *In re Bluetooth*, 654 F.3d at 950.

23          Counsel is on notice that the Court will not approve fees without having a thorough

24  understanding of the actual recovery to the class members.  It may, in fact, be necessary to

25  approve fees in stages if the Court does not possess sufficient information.[9]

26  _____

27          [9] For instance, the SA provides that the Claims Administrator will not begin to evaluate
    and process claims until the SA's Effective Date, which is the date on which the SA becomes final
28  after appeals are exhausted.  The SA'S Effective Date will therefore take place *after* the Final
    Fairness Hearing.  This timing may affect the Court's ability to have sufficient information to

United States District Court
Northern District of California

1  Thus, to facilitate that determination at the final approval stage, plaintiffs shall, in their

2  motion for final approval of the SA, provide relevant information and data, including the number

3  and estimated value of the claims timely filed by the claims-filing deadline; the estimated

4  aggregate recovery for the settlement class in light of those claims; the estimated average recovery

5  for class members who filed timely claims; how the estimated aggregate and average recoveries

6  for class members who filed timely claims compare to their potential recovery had they prevailed

7  at trial; the number of class members who received notice but will not be eligible for recovery

8  because they do not have a Class Policy; the number of class members who were eligible for

9  recovery but did not file claims; and the number of opt outs.  The Court is mindful that the SA

10  provides that the Claims Administrator will not begin to evaluate and process claims until the

11  SA's Effective Date (i.e., until the judgment becomes final after any appeals have been

12  adjudicated).  *See* SA § 6.7.  Nevertheless, to evaluate whether final approval of the SA can be

13  granted, the parties must file the information just described prior to the final fairness hearing.

14  **d.      Any agreement required to be identified under Rule 23(e)(3)**

15  Plaintiffs represent that there are no agreements under Rule 23(e)(3) to disclose.  Docket

16  No. 356 at 18 n.9.  Accordingly, this factor does not impact the Court's finding that the class

17  members' relief under the settlement is adequate and reasonable.

18  **C.      Proposed Notice Plan**

19  Given that the Court has found that the settlement class can be certified for the purpose of

20  judgment on the SA and that the Court is likely to approve the settlement under Rule 23(e)(2), the

21  Court must "direct notice in a reasonable manner to all class members who would be bound by

22  the proposal[.]" Fed. R. Civ. P. 23(e)(1).

23  The method of notice proposed for the purposes of the SA, which is notice via first class

24  mail with skip trace, is the same that the Court previously approved after granting certification to

25  the Rule 23(b)(3) California subclass.  The Court found that that method is the best practicable

26

27

28  make a final determination on attorneys' fees.

1   under the circumstances under Fed. R. Civ. P. 23(c)(2)(B).  *See* Docket Nos. 328, 334.  The Court

2   incorporates those findings here by reference.

3          As to the contents of the notice, the notice is satisfactory if it "generally describes the

4   terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

5   and to come forward and be heard."  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962 (9th

6   Cir. 2009) (citation omitted).  The Court previously identified some deficiencies in the proposed

7   notices in its order of May 1, 2023, but the parties have corrected all of them.  The Court is

8   satisfied that the revised proposed notices communicate the material terms of the SA in a neutral,

9   accurate, and easy-to-understand manner.  The proposed notices will be translated into multiple

10  languages, and those notices will be posted on the settlement website.  The notices advise class

11  members of the manner in which they can obtain an estimate of their expected settlement

12  payment so that they can make an informed decision about whether to submit a claim form, as

13  well as the manner in which they can object to the SA or opt out.  For active policyholders, the

14  notice informs them of the manner in which they can obtain an estimate of their policy's cash

15  value so that they can compare that value to their expected payment under the SA before deciding

16  whether to terminate their policies and obtain a payment under the SA.  The revised notices also

17  indicate that class members can obtain additional information about the settlement at the website

18  for the settlement and on the docket via PACER.

19         Accordingly, the Court approves the revised proposed notices as well as the proposed

20  notice plan.

21         **D.      Opposition to Motion for Preliminary Approval**

22         Wenjian Gonzales and Rui Chen, who were named plaintiffs in the original iteration of the

23  complaint filed on June 25, 2018, but are not named plaintiffs in the operative complaint, oppose

24  plaintiffs' motion for preliminary approval of the settlement.  Docket No. 358.  Plaintiffs filed a

25  response to Gonzales' and Ren's opposition.  *See* Docket No. 360.  For the reasons discussed

26  below, the Court is not persuaded by Gonzales' and Ren's arguments and overrules their

27  objections.

28

First, Gonzales and Chen argue that the Court should not grant preliminary approval of the SA because the SA seeks certification of a nationwide class. Gonzales and Chen are incorrect. As discussed above, the settlement class is materially identical to the *California* subclass that the Court previously certified. No nationwide class is at issue here.

Second, Gonzales and Chen contend that the Court should not grant preliminary approval of the SA because the formulas for calculating payments under the SA are confusing and class members do not have sufficient information to determine whether they should submit a claim form, opt out, or object. As discussed above, in response to comments in the Court's order of May 1, 2023, the parties revised the proposed notices, which now instruct class members with active and inactive policies as to how they can view, for the purpose of determining whether to submit a claim, an estimate of their settlement payment on the settlement website as well as the cash surrender value of policies that are active. The revised proposed notices also inform class members that they can contact Class Counsel if they have questions about the settlement or their potential recovery under the SA, and that they can view a copy of the SA and other relevant filings on the docket via PACER or on the settlement website. The Court finds that class members will have access to sufficient information to make educated decisions about whether to file a claim form, object, opt out, or investigate further.

Third, Gonzales and Chen also argue that it is not clear whether defendants will pay any amounts to class members because PFA made representations in 2018 or 2019 that it was close to being insolvent. In its order of May 1, 2023, the Court required plaintiffs to provide additional information as to this issue. In their supplemental statement, plaintiffs represent that "there is no basis to posit" that defendants, who are jointly liable for the settlement payments, are "in any danger of insolvency." *See* Docket No. 364 at 14. Based on plaintiffs' representation, the Court is persuaded that it is not likely that defendants will fail to pay amounts owed to class members because of insolvency issues.

Fourth, Gonzales and Chen argue that the Court cannot grant preliminary approval of the SA because the scope of the release is overbroad, as it releases "any possible claims, but must only include claims tracked from the complaint." Docket No. 358 at 7. The Court disagrees. As noted

United States District Court
Northern District of California

above, class members who do not exclude themselves will release claims that plaintiffs asserted or could have asserted in this action based on the factual predicate underlying the claims in this action.[10]  *See* SA § 2.26.  The scope of the release is, therefore, permissible.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (holding that a settlement "may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action . . . where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action").

Fifth, Gonzales and Chen contend that the Court should not grant preliminary approval because the proposed notice program is not the "most practicable" as it does not include notice by email.  Docket No. 358 at 7-8.  As discussed above, the proposed notice plan here is the same as the one the Court approved in September 2022.  S*ee* Docket No. 328.  The Court found at that time that notice via U.S. mail with skip trace was the best method of notice practicable because the parties had shown that LSW policyholders' mailing addresses are kept up to date but other contact information is not.  *See id.* at 1-2.  In the absence of evidence to the contrary, the Court reaffirms and incorporates its prior findings herein and the administrator can provide the Court with the means by which it attempted to contact all class members.

Sixth, Gonzales and Chen contend that the Court should not grant preliminary approval of the SA because the opt out procedure is too burdensome.  The Court disagrees.  As noted above, the parties amended the opt-out procedure in response to the Court's order of May 1, 2023, so that a Class member who wishes to opt out need only provide his or her policy number (which will be printed on the claim forms, as noted above) or the last four digits of his or her social

---

[10] "Released Plaintiffs' Claims" means and includes any and all Claims that were or could have been included in the Action, including without limitation Claims relating in any way, directly or indirectly, to: (i) whether PFA or LICS operates as an endless chain, pyramid scheme, or similar legally prohibited structure; (ii) the business or business model of PFA or LICS, (iii) any disclosures or omissions relating to PFA or LICS, and/or (iv) marketing or sale of any Living Life Policies.  Notwithstanding the foregoing, "Released Plaintiffs' Claims" does not include: (i) Claims to enforce contractual rights to benefits that do not arise out of a Plaintiff Release Party's Claim; and (ii) Claims to enforce the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement.  SA § 2.26.

United States District Court
Northern District of California

security number, in addition to name, address, signature, and statement of intent to opt out.  This procedure does not impose any undue burdens on class members.

Finally, Gonzales and Chen contend they should have the opportunity to petition for fees despite not having been appointed as class counsel.  Plaintiffs respond that "[n]othing prevents Gonzales Counsel from filing a petition for attorneys' fees."  *See* Docket No. 360 at 11.  The Court concurs.  Accordingly, this issue does not preclude granting preliminary approval to the SA.

### E. Proposed Schedule

The parties revised their proposed schedule pursuant to the Court's order of May 1, 2023, as set forth below.  Under the revised proposed schedule, class members would have at least 35 days to opt out or object to the settlement and the motion for attorneys' fees and costs.  The revised schedule also provides time for the parties to collect information about the number and type of claims submitted by class members, the expected value of the payments that would be made to class members who submitted timely claims, the number of opt outs, the number of objections, and other information that must be included in a motion for final approval of a settlement under the Procedural Guidance and other relevant authorities.  The Court approves the revised proposed dates.

| Event | Revised Proposed Date |
|---|---|
| Class Action Fairness Act ("CAFA") notice to state and federal officials, under 28 U.S.C. § 1715 | N/A.  Defendants already complied with this requirement. |
| Deadline to file on the docket a declaration attesting compliance with CAFA's notice requirements under 28 U.S.C. § 1715 | N/A.  Defendants already complied with this requirement. |
| Notice to be mailed to Class Members and posted on Settlement Website | Within 28 days after Preliminary Approval |
| Plaintiffs to move for final approval of the Settlement | 120 days after Preliminary Approval (30 days after the deadline for claims, opt-outs, and objections are due) |
| Plaintiffs to move for attorneys' fees, expenses, and service awards and post a copy of the motion on the settlement's website | 30 days after Preliminary Approval |
| Deadline for the submission of objections and requests for exclusion, and any opposition or objections to Plaintiffs' motion for attorneys' fees, expenses, and service awards | 90 days after Preliminary Approval |
| Deadline to submit a claim | 90 days after Preliminary Approval |

United States District Court
Northern District of California

| Filing of declaration confirming execution of Notice program | Within 60 days after Preliminary Approval |
|---|---|
| Filing of reply briefs in support of final approval and motion for attorneys' fees, expenses, and service awards, and responses to any timely objections | If a reply is necessary, at least 14 days before the Settlement Hearing |
| Settlement Hearing | 160 days after Preliminary Approval |

**IV.    CONCLUSION**

For the reasons set forth above, the Court **GRANTS** plaintiffs' motion for preliminary approval of the settlement agreement and preliminary certification of the settlement class.

The Court approves the proposed method of notice, the revised proposed notice forms, and the revised proposed claim forms.

The Court appoints Epiq Class Action & Claims Solutions, Inc. as the Claims Administrator.

A Settlement Hearing will be held on January 16, 2024, at 2:00 p.m.  The Court approves and adopts the parties' revised proposed dates, as set forth above.

**IT IS SO ORDERED.**

Dated: July 21, 2023

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**